UNITED STATES of America

v.

Michael FORTE.

Crim. No. 87–00258.

United States District Court, E.D. Pennsylvania.

March 25, 1988.

Edward S.G. Dennis, Jr., U.S. Atty., Michael L. Levy, Philadelphia, Pa., for plaintiff.

Stephen P. Patrizio, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendant Michael Forte ("Forte") is charged with violating 21 U.S.C. § 841(a)(1) by distributing over one hundred (100) gallons of phenyl–2–propanone ("P2P") and two (2) pounds of methamphetamine. Forte is also charged in this action with violating 21 U.S.C. § 846 by conspiring with twenty-seven (27) co-defendants and six (6) other co-conspirators to possess P2P with intent to distribute, to possess P2P with intent to manufacture methamphetamine, to distribute P2P, to possess methamphetamine with intent to distribute and to distribute methamphetamine, all in violation of 21 U.S.C. § 841. In sum, Forte is charged in this action with four (4) counts of violating 21 U.S.C. § 841(a)(1) and one count of violating 21 U.S.C. § 846 by conspiring to violate 21 U.S.C. § 841.

A substantial portion of the evidence gathered against Forte was obtained through electronic surveillance authorized

pursuant to 18 U.S.C. § 2518, on July 31, 1985, based on an Order issued by this court ("the Order") calling for the interception of wire communications on three (3) telephones in Philadelphia, Pennsylvania:

(a) (215) 922–9244, a coin-operated public telephone at the Cafe Lido located at 736–38 South 8th Street (referred to by the government as "the Lido phone");

(b) (215) 922–8380, a coin-operated public telephone at the Cafe Lido located at 736–38 South 8th Street (referred to by the government as "the second Lido phone"); and

(c) (214) 629–9625, a coin-operated public telephone at the Scioli-Turco Veterans of Foreign Wars ("VFW") Post, Post No. 593, located at 753 South 8th Street (referred to by the government as "the VFW Post phone").

Wire interceptions commenced that same date. The Order was extended through the end of September 1985. Forte now moves to suppress evidence obtained from the electronic surveillance. For the reasons stated herein that motion will be denied.

Before I address the merits of Forte's motion, I will delineate the scope of the court's review. This criminal action has been assigned through our random assignment of cases procedure to the Honorable Thomas N. O'Neill, Jr.; nevertheless I, as the authorizing and supervising judge of the electronic surveillance feature of the case, review the challenges to the validity or sufficiency of my Orders authorizing or approving electronic surveillance pursuant to Local Rule of Criminal Procedure 16(b). The following issues are raised by Forte's motion: (1) whether there was probable cause for the Order; (2) whether the Order was facially valid; (3) whether the interceptions were made in conformity with the Order; (4) whether the government followed appropriate minimization procedures; and (5) whether the interceptions violated the Fourth Amendment to the United States Constitution and the laws of the United States.

In his supporting memorandum, Forte addresses *only* issues No. 1 (probable cause) and No. 4 (minimization). Since

Forte does no more than list issue Nos. 2, 3, and 5, the court cannot address Forte's undisclosed thoughts on those issues nor is his position self-evident from the record and, accordingly, the court must deny his motion to the extent that it relies on those unargued issues. What follows is a discussion and resolution of issues No. 1 (probable cause) and No. 4 (minimization).

## I. *Probable Cause For Wiretap Order*

Forte argues that the government failed to establish probable cause in the affidavit accompanying its application for the wiretap authorization order. In order to obtain a wiretap authorization order, the government must show probable cause that the subject is engaged in specified illegal activity, that communications regarding such activity would be obtainable through monitoring, and that the premises where the interception is to take place is being used in connection with the illegal activity. *United States v. Armocida*, 515 F.2d 29, 36 (3d Cir.1975). The fourth amendment principles regarding property searches are applicable to electronic surveillance authorizations. *United States v. Tehfe*, 722 F.2d 1114 (3d Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984). Under established fourth amendment principles, probable cause is determined by the totality of the circumstances and only requires a probability, not a *prima facie* showing, of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). On review, the initial probable cause determination is entitled to deference and should be upheld so long as there is a substantial basis supporting the initial finding of probable cause. *Gates, supra.*

The July 31, 1985 affidavit of F.B.I. Special Agent Albert F. Bodnar and D.E.A. Special Agent Martin W. Pracht (hereinafter "Affidavit of July 31, 1985") set forth information from five different reliable sources to show probable cause to believe that Forte was involved in the distribution of controlled substances. Confidential Source-one ("CS–1"), who had been a reliable source for eight months, reported that

Forte was conducting his drug business at the Cafe Lido and Scioli-Turco VFW Post. CS-1 obtained this information through his/her personal observations at those locations and through conversation.

CS-3 reported to the government agents on his/her sales of P2P to Forte between April 1983 and November 1984. CS-3 had furnished reliable information for ten months, had testified before a grand jury, and had provided information which had resulted in the seizure of two gallons of P2P and $40,000.00 in cash.

CS-4 had been providing reliable information to the Pennsylvania Crime Commission for one year. During the week of May 6, 1985, CS-4 observed Forte meeting with a certain individual. That individual later told CS-4 that he/she had purchased methamphetamine from Forte at that May 6, 1985 meeting. CS-4 also saw Forte deliver a package to an individual referred to as "Angelo" during the week of May 6, 1985. During the week of May 31, 1985, CS-4 also observed a delivery of drugs to Forte from Angelo DiTullio.

On June 7, 1985, CS-5, who had given accurate information to the Philadelphia Police Department for three months, observed Angelo DiTullio deliver three pounds of a white powder substance to Forte.

CS-6 was a reliable source of information for the Philadelphia Police Department for six months and his/her information had given probable cause for two search warrants which resulted in the arrests of three people on methamphetamine charges. By April 1985, CS-6 was able to give a detailed description of how Forte conducted his drug sales.

Based upon the information received from these five reliable sources, there was a substantial basis supporting the court's initial finding that there was probable cause to believe that Forte was involved in the distribution of controlled substances. *Gates, supra.*

There was also probable cause to believe that the telephones that were the subject of the Order would be used to facilitate the distribution of controlled substances. CS-3, who provided information until November 1984, gave a basis to believe that Forte used the telephone to conduct drug deals, but his/her information did not specify any particular telephone. CS-4 observed Forte on the telephones in both the Cafe Lido and the VFW Post and during the week of May 6, 1985, heard Forte use the word "meth" on the VFW Post telephone shortly before an individual arrived to whom Forte sold drugs. CS-6 heard Forte talking on the Lido telephone to arrange drug transactions on May 4, 1985. This information from the informants was brought up to date by pen register information showing, *inter alia,* telephone calls from the VFW Post which Forte ran to telephone numbers belonging to Angelo DiTullio within two weeks of the filing of the wiretap application. Thus, there was probable cause to believe that Forte used the telephones at the VFW Post and the Lido Cafe to conduct his drug business.

## II. *Minimization*

Forte notes that pursuant to *United States v. Armocida, supra,* the burden is on the government to demonstrate what objectively reasonable steps it took to minimize the interception of non-pertinent conversations. Forte contends that a hearing is required as to minimization so that the government can sustain its burden. The government maintains that there is no need to hold an evidentiary hearing on the issue of minimization, unless the defense can make some showing to challenge the government's statistical analysis of intercepted telephone calls or to show the interception of non-pertinent conversations. *United States v. Cirillo,* 499 F.2d 872 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974).

Orders authorizing electronic surveillance must require that the order be executed "in such a way as to minimize the interception of communications not otherwise subject to interception ..." 18 U.S.C. § 2518(5). Whether the monitoring agents did a sufficient job of minimizing is to be decided by an objective review of their con-

duct without regard to their subjective intent. *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

"[W]hen the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Id.* at 140, 98 S.Ct. at 1725. In *Scott,* the Court stated that "[d]uring the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter." *Id.* at 141, 98 S.Ct. at 1725. The Court in *Scott* also noted that:

> Other situations may arise where patterns of nonpertinent calls do not appear. In these circumstances it may not be unreasonable to intercept almost every short conversation because the determination of relevancy cannot be made before the call is completed.

*Id.*

■ Where a telephone conversation lasts less than two (2) minutes, it is often difficult to determine the nature of the conversation and intercepting such a conversation in its entirety does not violate the minimization requirements. *United States v. Armocida, supra,* at 45.

The United States Court of Appeals for the Third Circuit in *United States v. Vento,* 533 F.2d 838 (3d Cir.1976), stated that "the interception of conversations not related to [the] authorization does not, without more, permit an inference of failure to minimize." *Id.* at 852. In both *Vento* and *Armocida* the Third Circuit identified three factors which must be considered in any review of minimization:

1. The nature and scope of the criminal enterprise under investigation. Where the wiretap is authorized to identify other participants and to determine the scope of the conspiracy, and where the participants speak in code, greater latitude is permitted. (This factor is also noted in *Scott, supra.*)

2. The government's reasonable expectation as to the character of, and parties to, the conversations. Where the government knows who the participants

are and when they use the telephone, it should tailor the interceptions in line with this knowledge.

3. The degree of judicial supervision. If the court issuing the order required regular reports, the facts of the supervision should be considered in deciding the reasonableness of the minimization.

*Vento, supra,* at 852–53; *Armocida, supra,* at 42–46.

■ Turning to the present case, the Affidavit of July 31, 1985 spelled out a wide ranging conspiracy and sought permission to wiretap in order to learn, *inter alia,* the identities of the members of the conspiracy. Affidavit of July 31, 1985 at paragraph 25(a)(3). As the seven day progress reports made clear, some of the persons involved in this conspiracy spoke in code (*e.g.,* Third Progress Report, referring to the code for a pound of methamphetamine as "one of those things" or "one thing;" Fourth Progress Report, "the doctor's appointment" conversation; Sixth Progress Report, the "how do you feel" conversations; Seventh Progress Report, caller asking if he can depend on "that" tomorrow). Thus, broader surveillance was permissible under *Scott, supra,* and the first factor of both *Armocida, supra,* and *Vento, supra.*

The Order of July 31, 1985 directed that the interceptions of oral communications "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under Chapter 119 of Title 18, United States Code ..." Order of July 31, 1985, at p. 4.

As the surveillants began to learn the calling patterns, they reduced the hours of monitoring. *See* First Progress Report. In addition, when the monitoring agents knew that most of the subjects would not be at the location of the surveillance for hours or days at a time, there was no surveillance. *See* Fifth Progress Report, no surveillance on Labor Day Weekend; Eighth Progress Report, no surveillance on the Lido telephones due to inactivity. Thus, the second factor of both *Armocida* and *Vento* was met.

The third factor espoused by the Third Circuit in *Armocida* and *Vento* is whether the supervising judge was kept aware of the minimization efforts. In light of *Scott, supra,* which was decided by the United States Supreme Court after the Third Circuit's *Armocida* and *Vento* opinions, there is a question whether this is a proper factor for determining whether a violation has occurred. Whether the authorizing and supervising judge was aware of the minimization efforts really seems to go to the good faith of the monitoring agents. If the supervising judge was aware of the minimization efforts as I was and did not order further minimization, then one could argue that the monitoring agents relied in good faith upon the judge's acquiescence in their efforts as conveying approval. *Scott,* however, holds that the issue of the good faith of the monitoring agents is *not* a factor in determining whether a violation has occurred.

█ In the instant case a statistical analysis of the calls, their length and the number minimized was presented to the court each week by the government attorneys. Although a statistical analysis is not determinative of the issue, it is a useful factor. *Scott, supra; Armocida, supra.* The statistical breakdown of telephone calls provided to the court and a percentage analysis indicates the following:

| Progress Report | Total Calls | Drug Related | Other Violations | No. and % Less Than 2 Minutes | | No. and % Minimized | |
|---|---|---|---|---|---|---|---|
| 1 | 997 | 60 | 86 | 759 | 76% | 125 | 13% |
| 2 | 1,107 | 77 | 107 | 877 | 79% | 295 | 21% |
| 3 | 943 | 75 | 114 | 794 | 84% | 205 | 22% |
| 4 | 1,050 | 84 | 140 | 910 | 87% | 187 | 18% |
| 5 | 526 | 26 | | 419 | 91% | 156 | 30% |
| 6 | 1,002 | 78 | | 797 | 80% | 222 | 22% |
| 7 | 601 | 47 | | 481 | 80% | 292 | 49% |
| 8 | 463 | 32 | | 352 | 76% | 130 | 28% |

As reflected in the table above, the majority of telephone calls were less than two minutes in length. Many of those calls were self-minimizing (*i.e.,* they ended before the monitoring agent could determine if they were pertinent or innocent calls). Some calls were so short that the monitoring agents were unable to put on their headphones to listen before the conversation ended. *See* Second Progress Report. The percentage of calls minimized by the monitoring agents generally increased over the life of the wiretaps. By the time of the Third Progress Report the monitoring agents were able to inform the court of the number of calls made by the key persons and how many of them were pertinent calls.

Thus, the court concludes that viewed objectively, the monitoring agents' conduct met the test of objective reasonableness of *Scott, supra.* From the weekly progress reports that were submitted to the court containing a statistical analysis of the number of calls intercepted, the number of calls that were deemed to be drug related, the number of calls that were less than two minutes duration, and the number of calls that were minimized, the court finds that the monitoring agents "exercised their discretion in a good faith effort to minimize ..." *Armocida, supra,* at 45.

At a minimum, the showing by the government was a *prima facie* showing of a "reasonable effort in minimizing the interception of 'innocent' conversations" and this "shifts the burden to the defendant to show more effective alternative procedures for minimization which nevertheless would permit the government to achieve its objectives." *Id.* Forte has neither suggested any more effective alternative procedures for minimization nor made any challenge to

the government's statistics nor shown the interception of non-pertinent conversations. Thus, the court sees no need to hold an evidentiary hearing on the issue of minimization. *United States v. Cirillo, supra,* at 880–881.

 Forte claims that the affidavit failed to show a need for electronic surveillance because the government could have prosecuted Forte based upon evidence it already possessed. This contention must be rejected for, *inter alia,* the following reason:

> Although the government had actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned.

*Armocida, supra,* at 38.

Additionally, as indicated above, the Affidavit of July 31, 1985 contained a section describing the objective of the investigation including the need to identify all of the members of the conspiracy. Affidavit of July 31, 1985, at paragraph 25(a)(3). Furthermore, the affiants acknowledged that it would be possible to prosecute Forte for a purchase from CS–3 of P1P, a non-controlled substance, which CS–3 represented to be P2P. The affiants, however, explained how that would inhibit prosecution of the full scope of the illegal enterprise. Affidavit of July 31, 1985, at paragraphs 25(h) and (i). Thus, the affidavit showed a need for electronic surveillance and the Order authorizing that surveillance was justified and valid.

### III. *Conclusion*

Forte's motion to suppress evidence obtained from the electronic surveillance will be denied since there was probable cause to issue the Order authorizing the electronic surveillance, the Order is facially valid, the interceptions were made in conformity with the Order, the government followed appro-

priate minimization procedures, and the interceptions were legal.

An appropriate Order will be entered.