**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David BARRERA, Defendant–Appellant.**

No. 87–1230.

United States Court of Appeals, Tenth Circuit.

April 7, 1988.

Alan F. Zvolanek, Albuquerque, N.M., for defendant-appellant.

Presiliano A. Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and James D. Tierney, Asst. U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

David Barrera, the appellant, and two others, Michael L. Murray and Ernesto Michael Martinez, were jointly charged in the first count of a two-count indictment with unlawfully possessing methamphetamine, a Schedule II controlled substance, with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In the second count, the same three were charged with unlawfully manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

In a joint trial Barrera and Murray were convicted on both counts. Barrera appeals his conviction, as does Murray by a separate appeal, *United States v. Murray*, 843 F.2d 1582, decided by separate opinion on this date. Martinez was convicted of a lesser included offense in Count 1, and he does not appeal his conviction. On appeal, Barrera's sole argument concerns the search of his private residence and a small outbuilding adjacent to his residence.

On October 22, 1986, law enforcement officers for Albuquerque, New Mexico, after a search warrant was issued by a state district judge for the State of New Mexico, searched the residence and an adjacent outbuilding belonging to Barrera located on Sportsman Drive in Valencia County about ten miles east of Los Lunas, New Mexico. Los Lunas is located twenty-four miles south of Albuquerque.

The search warrant was issued on the basis of an affidavit by Detective Houry (at times referred to as Houri or Haury by the parties and in the record) of the Albuquerque Police Department. In the search of the outbuilding the police found all three defendants *and* a methamphetamine laboratory in operation. Murray, for example,

when apprehended was wearing rubber gloves, standing next to a fifty-five gallon drum, pouring something into a funnel set in the drum. Martinez testified at trial that although he had accompanied Murray on the drive from Albuquerque to Barrera's residence near Los Lunas, he was simply "going to a party" and knew nothing about the manufacture of methamphetamine at Barrera's residence. Neither Barrera nor Murray testified. Under the circumstances, they could hardly deny that they had been caught red-handed, so to speak, in the possession of, and in the manufacture of, what was identified at trial as methamphetamine. Certainly the government's evidence, which stood unrebutted insofar as Barrera and Murray were concerned, showed that both were physically present in an outbuilding on Barrera's premises where the manufacture of methamphetamine was in progress.

Prior to trial, Barrera, as well as the other defendants, filed, *inter alia,* a motion to suppress the use at trial of the evidence seized in the search of his residence and the outbuilding where the manufacture of methamphetamine was being conducted, contending that the search warrant was invalid because the affidavit given the state district judge who issued the warrant was inaccurate in several particulars. The motion to suppress was supported by several affidavits.

When this motion came on for hearing, Barrera, and the others, proposed to call as a witness the confidential informant whose information Detective Richard Houry had referred to, and relied on, in the affidavit which was submitted to the state judge in support of the request for a search warrant. The district court refused to allow defense counsel to examine the confidential informant on the ground that she had not been properly served with a subpoena, even though the informant was at the time physically present in another part of the court-house, apparently under the aegis of the United States Attorney.

Thereafter, apparently at the suggestion of the United States Attorney, the district judge conducted an *in camera* hearing wherein he, without counsel, questioned both the confidential informant and Detective Houry, the affiant. At the conclusion of this *in camera* proceeding, the district court denied, without comment, the motion to suppress and also denied, without comment, a renewed request by all defendants that they be given an evidentiary hearing of the type referred to in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978).[1] Trial ensued, and the jury, as above stated, convicted Barrera and Murray on both counts, and Martinez on a lesser included offense under Count 1 only.

In denying certain post-trial motions, the district judge gave an explanation for his earlier denial of the defendants' motion to suppress and his refusal to grant them a pretrial *Franks* hearing. In his order denying these post-trial motions, the district judge conceded that the affiant had made statements in his affidavit concerning information purportedly given him by the confidential informant which were "capable of misinterpretation," but that "even with the excision of those portions of the affidavit which were capable of a false interpretation, the affidavit would have been sufficient to show probable cause for issuance of the warrant."

The precise issue here to be resolved is not whether the motion to suppress should have been granted, but whether the district court erred in refusing to grant Barrera, and his codefendants, an evidentiary hearing on the legal sufficiency of the affidavit offered in support of the search warrant. Resolution of that issue involves an application of *Franks v. Delaware, supra.* In *Franks,* the Supreme Court framed the question there to be answered as follows:

---

1. Although there is some suggestion by the government that it was desirable to preserve the identity of the confidential informant, there is not much doubt that defense counsel even prior to the hearing on the motion to suppress were well aware of the identity of the informant.

Hence, the *in camera* hearing cannot be justified on the ground that it was necessary to protect the informant. Further, an *in camera* proceeding is not a substitute for a *Franks* type hearing. *United States v. Kiser,* 716 F.2d 1268, 1273 (9th Cir.1983).

Does a defendant in a criminal proceeding ever have the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant?

The Supreme Court, *Id.* at 171–2, 98 S.Ct. at 2684, answered that question as follows:

In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

As indicated, in the instant case Barrera and the other defendants filed affidavits which attacked the informant's past reliability and also challenged the correctness of the statements which the informant attributed to Murray. Those particular challenges do not meet the substantial preliminary showing of falsity required by *Franks.* However, the defendants' affidavits also brought into issue the accuracy of Detective Houry's recitations in his affidavit. We need not here decide whether in that regard the defendants' affidavits are themselves sufficient to meet the first prong of the two-pronged test set forth in *Franks,* because in our view the answers given by the informant and Detective Houry to the questions of the district court in the *in camera* hearing more than met the requirement of a substantial preliminary showing that the affidavit contained material misstatements.

The transcript of the *in camera* proceedings discloses that on the day before the search the confidential informant told Detective Houry that Murray was "cooking some speed" at a lab somewhere in the Los Lunas area and that Murray was going to the lab on the following day. The informant further testified, however, that she did not know the address of the place where Murray was making drugs and that she had never been there. Detective Houry agreed that the confidential informant was unable to give him any information as to the location of the drug making activity on the part of Murray, other than it was in or near Los Lunas.

Detective Houry went on to testify in the *in camera* proceeding that the police learned of the address of the premises which were subsequently searched through a surveillance of Murray which led the police from Albuquerque to premises located ten miles east of Los Lunas. He explained that he prepared the affidavit setting forth what he had learned from the confidential informant while other police were following Murray from Albuquerque to Los Lunas, and then when the surveillance team ascertained the address of the house to which Murray had gone, they radioed back the address and he (Houry) then filled in the "top" part of his affidavit which described the premises to be searched. Detective Houry testified that after the warrant issued, the described

premises were searched at about 8:00 p.m. on October 22, 1986.

The "top" part of Houry's affidavit described the premises which the police sought to search in the following language:

The premises to be searched is a single family dwelling located on Sportsman Dr. in Valencia County. The residence has a pitched roof with brown shingles and a mustard colored siding with dark brown trim and shutters. A mail box with the address Rt. 5, Box 593 is located directly north of the house. A small outbuilding is in S.E. area of the land on which the residence sits. The residence is under surveillance by law enforcement officers at the time of this writing. Also a 1976 Chevrolet pickup N.M. JL–4035.

In the body of the affidavit Detective Houry attributed two statements to the confidential informant which appear to us to be misstatements. At one point in his affidavit Detective Houry spoke as follows: "Confidential informant contacted affiant, advising that Michael Murray is currently operating a methamphetamine laboratory, *located at the above described premises*" (emphasis added). At another place in his affidavit Detective Houry spoke in similar fashion: "Detectives established a surveillance on Michael Murray at this point and followed Michael Murray and other unknown subjects to above described premises, *where the confidential informant advises the methamphetamine laboratory is located*" (emphasis added).

Those two statements indicate that the informant gave Detective Houry the address and location of the premises where methamphetamine was being manufactured by Murray. At the *in camera* hearing both the confidential informant and Detective Houry agreed that the informant did *not* give Detective Houry the address or location of the premises to be searched for the very good reason that she simply did not know where the laboratory was, other than in the Los Lunas area. Without further belaboring the matter, as above

indicated, the information elicited in the *in camera* hearing was itself sufficient to meet the first prong of the two-pronged *Franks* test, i.e., a substantial preliminary showing of false statements in the affidavit.[2]

Under *Franks*, even if a defendant makes a substantial preliminary showing that the affiant, either knowingly or recklessly, made false statements in his affidavit, a hearing need not be held if, after setting aside the material which is subject to the charge of falsity, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks, supra,* 438 U.S. at 172, 98 S.Ct. at 2684. In the instant case, the district judge in denying post-trial motions held that laying aside the statements by Detective Houry in his affidavit that the confidential informant gave him the address and location of the place where Murray was manufacturing methamphetamine, there remained in the affidavit "sufficient content" to establish probable cause which in itself supported the issuance of the warrant. We agree with the district court's analysis of the affidavit.

Detective Houry's affidavit, which was the sole basis for the issuance of the search warrant, reads, in pertinent part, as follows:

Within the last 36 hours, affiant has received information from a reliable, confidential informant in reference [sic] a methamphetamine lab being operated by the above named offender [Murray].

Confidential informant contacted affiant, advising that Michael Murray is currently operating a methamphetamine laboratory, located at above described premises. Confidential informant has been involved in or has over heard on at least two occasions in the past 36 hours, that the methamphetamine laboratory is currently in operation and "cooking." (Referring to the actual process of manufacturing methamphetamine.) The conversations that the informant has been in-

---

**2.** The district judge in denying defendants' post-trial motions indicated doubt that Detective Houry's misstatements were intentionally or recklessly made, but the judge did not stake his refusal to afford defendants a *Franks*-type evidentiary hearing on that ground.

volved in or overheard, were conversations directly held with Michael Murray. The informant stated that on October 22, 1986, that Michael Murray would be traveling to the laboratory to "finish the batch." (Referring to a final drying process of the manufacture of methamphetamine.) On October 22, 1986, affiant, along with other detectives, observed Michael Murray go to a residence in the area of Luthy and Constitution NE, in Albuquerque, New Mexico. This residence is known by affiant to be the residence of Jessie Shirm, an individual known by affiant to be a current methamphetamine user. Detectives established a surveillance on Michael Murray at this point and followed Michael Murray and other unknown subjects to above described premises where the confidential informant advises the methamphetamine laboratory is located (emphasis added).

The underlined portions of the affidavit are the two instances where the affiant stated that the confidential informant gave him the location and address of the premises where Murray was manufacturing methamphetamine. As indicated, both Detective Houry and the confidential informant in their testimony during the *in camera* hearing agreed that the informant did *not* give Detective Houry the location or address of the place where Murray was manufacturing methamphetamine for the good reason that the informant did not know the location of the laboratory, other than in the Los Lunas area.

■ However, we agree with the district court that laying to one side the underlined portions of the affidavit set forth above, there remains sufficient content to establish probable cause for the issuance of the warrant. The confidential informant advised the affiant that on two separate occasions within the preceding 36 hours, Murray had stated that he was operating a methamphetamine laboratory which was currently "cooking" and that on October 22, 1986, he would be traveling to the laboratory to "finish the batch." On October 22, 1986, the police placed a surveillance on Murray and followed him from Albuquerque to premises located several miles east of Los Lunas. After radioing back to police in Albuquerque the description, location and address of the premises to which Murray had gone, and after having been advised that Albuquerque police had obtained a search warrant for the described premises, police searched Barrera's residence and outbuilding with the results set forth above.

When a court is required to determine the sufficiency of an affidavit previously offered in support of a request for a search warrant, it should view the affidavit in a commonsense, nontechnical manner, with deference to be given in marginal cases to the prior determination of probable cause by the issuing authority. Further, "consideration of the probable cause showing must be based solely on the facts and circumstances presented in the affidavit when application for the warrant was made [citation omitted]. Thus information which may be known to the affiant or which is subsequently revealed at a later hearing, but which was not submitted to the issuing officer, is irrelevant." *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir.1979).

In *United States v. Riccio*, 726 F.2d 638, 641 (10th Cir.1984), we held that an "inaccurate statement" in an affidavit did not invalidate the warrant issued thereon where there were "sufficient accurate statements of fact which support the issuance of the warrant." Similarly, in the instant case sufficient accurate statements in the affidavit remain to support the issuance of the warrant based on probable cause.

Judgment affirmed.