UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald Freeman OWENS,
Defendant–Appellant.

No. 87–1639.

United States Court of Appeals,
Tenth Circuit.

Aug. 10, 1989.

Alan F. Zvolanek, Albuquerque, N.M., for defendant-appellant.

Mark Jarmie, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty. and Jennifer A. Salisbury, Asst. U.S. Atty., Albuquerque, N.M., were on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH and ANDERSON, Circuit Judges.

HOLLOWAY, Chief Judge.

Defendant Donald Freeman Owens (Owens) filed a motion for relief under 28 U.S.C. § 2255 (1982), claiming that he was denied effective assistance of counsel. The district court, adopting the magistrate's proposed findings of fact and recommended disposition, denied the motion and dismissed. We affirm.

I

*Factual Background and Procedural Posture*

Owens was convicted on ten counts of making false statements in the acquisition of firearms, a violation of 18 U.S.C. § 922(a)(6) (1982) and 18 U.S.C. § 924(a) (1982). He was also convicted on four counts of receiving firearms as a felon, a violation of 18 U.S.C. § 922(h)(1) (1982) and 18 U.S.C. § 924(a) (1982). The jury found him not guilty on one count (Count 15) charging him with possession of a firearm as a felon. We affirmed his convictions on direct appeal in *United States v. Owens*, No. 84–1856 (May 20, 1985). Owens then filed a Fed.R.Crim.P. 35 motion, which was denied. This motion for relief under § 2255 followed. That motion was denied and this appeal was taken.

A.

*Evidence Seized Pursuant to the Search Warrant and Admitted at Trial*

Owens' conviction was supported by documents and photographs seized at his residence during a warrant search.[1] Police officers Nester and Harper executed an affidavit in support of the warrant. I R. 8, Ex. A. The affidavit contains a detailed description of the exterior of Owens' home. It describes the property to be searched

---

1. A number of weapons were also found during the search. II R. 22. However, the only one that was introduced against Owens at trial was a .38 caliber pistol found in his girlfriend's purse. The jury found him not guilty of the charge (possession of a firearm by a felon) relating to that weapon. *Owens,* Slip op. at 2.

for, including methamphetamine, a methamphetamine laboratory, methamphetamine paraphernalia, records showing the source and the prices for methamphetamine, writings showing the identity of Donald Freeman Owens or Jimmy or Jim Owens, and "ALL FIREARMS & AMMUNITION in the residence, vehicles or curtilage of the property...." I R. 8, Ex. A. The affidavit was based substantially on information obtained from a confidential informant. II R. 67.

The day before trial, Owens' attorney filed a motion to suppress evidence, arguing that the "warrant was obtained by false, inaccurate, misleading and perjured" statements in the affidavit. Mr. Farrah asked the court to grant a hearing on the motion and to suppress the evidence obtained during the search. I R. 8. The trial court denied the motion to suppress without an evidentiary hearing. I R. 11. The evidence was introduced and Owens was convicted on all but one count. No challenge to the trial court's denial of the motion to suppress and denial of the hearing was raised on direct appeal.

### B.

### *Testimony for Owens in Support of the § 2255 Motion*

Before ruling on Owens' motion for § 2255 relief, the United States Magistrate held an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts.[2] At the hearing, Owens' attorney on appeal, Mr. Zvolanek, informed the court that he had spoken to a Mr. Thompson. Thompson is the person referred to in the affidavit who allegedly took the confidential informant to Owens' home.[3] Zvolanek said that Thompson would testify, if he were available, that he had never been to Owens' home. This testimony would contradict the information related by the confidential informant in the warrant affidavit. *See* footnote 3. Zvolanek requested an opportunity to depose Thompson. II R. 6, 9. The court indicated that it would consider allowing Owens' attorney the opportunity to depose Thompson, but counsel's request was never granted. II R. 96.

The first witness at the evidentiary hearing was Owens' attorney at trial and on direct appeal, Mr. Farrah. He said that he and Owens had gone to Thompson's house. Thompson indicated that he had seen Owens but did not know him and had not been in his house or dealt with him. II R. 12. Thompson also told Farrah that he had never purchased drugs from Owens. II R. 13. Farrah attempted to subpoena Thompson to testify at the hearing on the motion to suppress, but his process server was unable to locate him. II R. 16.

Shelly Watkins, who was living at Owens' residence when it was searched, testified that although she had seen Thompson down the street, she did not know him and had never seen him at Owens' house. II R. 20–21. Owens also testified that he did not know Robert Thompson and that Thompson had never been to his house. II R. 28. He also said that when he and Farrah went to talk with Thompson, Thompson said that he had never told anyone that Owens was manufacturing methamphetamine. II R. 28, 30.[4] Owens said that he told Farrah that the search warrant was false and asked him to file a motion to suppress. II R. 32.

---

2. Rule 8(b)(1) and (2) provide that:
    (1) When designated to do so in accordance with 28 U.S.C. § 636(b), a magistrate may conduct hearings, including evidentiary hearings, on the motion, and submit to a judge of the court proposed findings and recommendations for disposition.
    (2) The magistrate shall file proposed findings and recommendations with the court and a copy shall forthwith be mailed to all parties.

3. The affidavit states that "[i]nformant advised us that within the past month, Robert [Thompson] took informant to 2230 Henry Rd., described above, and there the informant met the male house occupant and a woman living there." The affidavit also relates a description of Owens' home given to the affiants by the informant. I R. 8 Ex. A.

4. The affidavit states that the informant was taken by Thompson to Owens' home and describes Owens as Thompson's source for methamphetamine. I R. 8, Ex. A.

## C.

### Testimony for the Government in Opposition to the § 2255 Motion

Alcohol, Tobacco, and Firearms agent Fuller, who participated in the search of Owens' home, testified that before the warrant was executed, he had investigated Owens. He had seen Owens with a known chemical supply person and had checked with the DEA to find out if they knew anything about Owens. Fuller also checked Owens' name with Albuquerque gun dealers and discovered that someone named "Jimmy Owens" had been purchasing paramilitary weapons. II R. 50. Fuller found fifteen to twenty different gun dealers that had records of having sold guns to Owens. II R. 50. He took down information from these various dealers. II R. 52. Fuller knew that Donald Freeman Owens had been purchasing guns as a felon under a false name (his brother's name was Jimmy Owens) prior to the execution of the search warrant. II R. 54, 56–58.

Fuller said that he had received information relating to all of the counts charging Owens with receiving firearms as a felon (counts IV, VI, VIII, and X) *prior* to the search. II R. 55–56. Fuller also said that all of the counts charging Owens with false statements in the acquisition of firearms were supported by records of which he had knowledge prior to the search. II R. 57–58. The only receipts found during the search were from Ron Peterson's guns and the Golden West in Bosque Farms. Fuller had already obtained the information from Ron Peterson's guns. II R. 65. And the receipt relating to the purchase of a weapon from the Golden West did not involve a weapon listed in the indictment. II R. 65.

Officers Harper and Nestor, co-affiants on the affidavit, admitted that most of the information in the affidavit was obtained from the confidential informant. II R. 67. They said, however, both in the hearing and in the affidavit, that they corroborated the information received from the confidential informant. Harper confirmed that Owens' residence matched the description given by the informant. II R. 68. He confirmed with postal authorities that Thompson received mail at the address given. II R. 69. He checked the registration on a vehicle at Owens' residence and performed a records check on Owens as well. II R. 71–72. Harper also had the confidential informant purchase a quantity of methamphetamine from Owens and confirmed that it was methamphetamine. II R. 75.

Harper said that after he had checked the information given by the confidential informant, he believed that he was telling the truth, although he admitted that the informant could not identify Owens at the line up. II R 76, 79. Like Harper, Nestor testified that he corroborated the information received from the informant; that he had been in contact with the informant three weeks prior to the search. II R. 90, 94–95. He advised the informant that if the information given was false, criminal charges possibly would be brought against him. II R. 91.

## D.

### The Rulings Below

The magistrate proposed a finding that Owens' convictions for making false statements in the acquisition of firearms and for receiving firearms as a felon were supported by evidence not obtained pursuant to the contested search warrant. I R. 62, p. 2. His proposed finding also was that defendant had failed to show both that his counsel was ineffective and that there was a reasonable probability that, but for counsel's errors, the outcome would have been different. I R. 62. The district court adopted the magistrate's proposed findings after a *de novo* review and denied the motion. A timely notice of appeal was filed.

## II

### Analysis

■ The defendant argues that he was denied his Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The claim is based on Mr. Farrah's alleged failure to

provide the trial court with proper information to obtain an evidentiary hearing of the kind referred to in *Franks v. Delaware,* 438 U.S. 154, 171–172, 98 S.Ct. 2674, 2684–2685, 57 L.Ed.2d 667 (1978), to challenge statements made in the search warrant affidavit.[5] Since the principal allegation of the Sixth Amendment claim is Farrah's handling of the Fourth Amendment claim, the *Franks* claim, Owens must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different, absent the excludable evidence, to demonstrate actual prejudice. *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986).[6] The defendant's Fourth Amendment claim "is one element of proof of his Sixth Amendment claim...." *Id.* Accordingly, we turn first to the Fourth Amendment claim.

### A.
#### The Merit of Owens' Fourth Amendment Claim

■ Owens argues that if the motion to suppress had been pursued more effectively, the trial court would have granted an evidentiary hearing at which he could have challenged the accuracy of the factual statements made in the warrant affidavit.[7] In *Franks,* the Court enunciated a two-pronged test, which if satisfied, entitles a defendant to an evidentiary hearing:

> There must be allegations of deliberate falsehood or of reckless disregard for the

truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks,* 438 U.S. at 171–172, 98 S.Ct. at 2684. While clear proof of deliberate or reckless omission is not required at the stage where entitlement to an evidentiary hearing is being demonstrated, *see United States v. Stanert,* 762 F.2d 775, 781 (9th Cir.1985), *amended,* 769 F.2d 1410 (9th Cir. 1985), Owens had to make a "substantial preliminary showing." *Franks,* 438 U.S. at 170, 98 S.Ct. at 2684.

■ We conclude that Owens did not make a substantial preliminary showing that the warrant affidavits contained deliberate falsehoods, or false statements or

---

**5.** The restrictions on federal habeas review of Fourth Amendment claims announced in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) do not extend to Sixth Amendment claims of ineffective assistance of counsel where the principal error of counsel was incompetent representation with respect to a Fourth Amendment issue. *Kimmelman v. Morrison,* 477 U.S. 365, 379, 382–383, 106 S.Ct. 2574, 2586–2587, 91 L.Ed.2d 305 (1986).

**6.** Owens' brief states that his trial counsel did not "raise the denial of his suppression motion on [direct] appeal because he felt that an investigation of Owens had been begun earlier by Alcohol, Tobacco and Firearms and that since evidence had been obtained from gun dealers with regard to Owens purchasing guns, it wasn't the fruits of the search." Brief of Appellant, p. 5. The government does not contest this state-

ment, nor does it argue that Owen's collateral attack here is barred by procedural default. Because the issue was not contested by the government or ruled on in the trial court, we do not address the issue, but go on to the merits of Owen's claim.

**7.** Mr. Farrah, Owens' lawyer at trial, filed the motion to suppress evidence the day before trial. I R. 8. The motion alleges that the warrant was obtained by false, misleading and perjured testimony, but was not supported by affidavits or sworn statements. No offer of proof was made in support of the motion. On appeal, Owens' argues that the "denial [of the suppression motion without a hearing] occurred because counsel did not provide the Court with the proper information necessary to justify such a hearing." Brief of Appellant, p. 10.

omissions made with reckless disregard for the truth.[8] Owens made, in effect, an offer of proof at the hearing which was designed to show that Mr. Thompson would testify, if called, that he had never been to Owens' home and had never taken anyone to Owens' home. II R. 5–9. Thompson was the person referred to in the affidavit supporting the search warrant. The affidavit states that Thompson took the informant to Owens' home to get methamphetamine.[9] But even if Thompson would testify that he had never been to Owens' home, that would only establish that the confidential informant gave false information to the affiants (as noted, the affidavit specifically states that the information was obtained from the informant). It would not show that the *affiants* knowingly falsified the affidavit or recklessly disregarded the truth.

■ "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. It is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit. *United States v. Orr,* 864 F.2d 1505, 1508 (10th Cir.1988); *United States v. Bloom-gren,* 814 F.2d 580, 584 (10th Cir.1987). Thus to qualify for a *Franks* hearing, Owens must make a substantial showing that Harper and Nestor knew of, or recklessly disregarded the truth. *Bloomgren,* 814 F.2d at 584 (citing *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981)). The offer of proof failed to meet this standard.

The other testimony at the hearing was similarly deficient. Farrah testified that Owens told him that although he had seen Thompson, he did not know him and had never been in his house. II R. 12. Shelly Watkins, who lived with Owens when the search warrant was executed, testified that she did not know Thompson and had not seen him at Owens' house. II R. 20–21. Owens said that Thompson had never been to his house. II R. 30. But this testimony only shows that the information given to the affiants by the confidential informant may have been false. It does not show or tend to show that the affiants knowingly falsified the affidavit or recklessly disregarded the truth.[10]

In *United States v. Barrera,* 843 F.2d 1576, 1579 (10th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 153, 102 L.Ed.2d 124 (1988), we held that affidavits submitted in support of a *Franks*-type hearing which

---

8. While the magistrate's findings and recommended disposition do not specifically address the *Franks* issue, we have carefully reviewed the transcript of the Rule 8 hearing. An analysis of the *Franks* issue is important since the Sixth Amendment claim necessarily fails without a meritorious Fourth Amendment claim. *See Kimmelman,* 477 U.S. at 375, 106 S.Ct. at 2582.

9. The affidavit states that the "informant admitted involvement in criminal conduct, including acquiring illegal drugs and methamphetamine from 'ROBERT' (Thompson) and from Robert's methamphetamine source at 2230 Henry Road SW, Albuquerque, Bernalillo County, New Mexico." I R. 8 Ex. A. Thompson lived at 2218 and Owens lived at 2230 and is the "source" referred to in the affidavit. The affiants go on to state that:

The informant advised the Affiants that on several occassions in 1983, it [sic] had personally been inside the premises at 2218 Henry Road SW, Albuquerque, New Mexico and on several of those occasions obtained methamphetamine at that premises. The informant advised that the person from whom it is getting the methamphetamine is a man named

'Robert' (last name is not known to the informant).

\* \* \* \* \* \*

The informant indicated that 'Robert' has an ongoing methamphetamine-selling business from his (Robert's) house because of informant's numerous observations and several acquisitions of methamphetamine from Robert at 2218 Henry Road SW, in 1983, including observations of methamphetamine there in the fall of 1983. *Informant advised us that within the past month, Robert took informant to 2230 Henry Rd., described above, and there the informant met the male house occupant and a woman living there.*
See I R. 8, Ex. A (Emphasis added).

10. We note that Owens specifically argues that "the confidential informant lied in giving information of the officer/affiants and that the lies were material to the issue of probable cause to issue the search warrant." Brief of Appellant—Owens, p. 16. Owens' argument, as well as the evidence at the hearing is focused on the veracity of the informant, not the veracity of the affiants.

attack the informant's reliability and the correctness of the informant's statements "do not meet the substantial preliminary showing of falsity required by *Franks*." Here, the evidence only shows that some of the information given to the affiants by the confidential informant may have been false. The evidence does not establish that officers Harper and Nestor knowingly falsified the affidavit or recklessly disregarded the truth.

Owens next argues that Mr. Farrah should have supported the motion to suppress with an offer of proof and with affidavits.[11] It is true that allegations of deliberate falsehood or of reckless disregard for the truth "must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. And "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* But even if Mr. Farrah had made an offer of proof, and even if the motion to suppress had been supported by affidavits or other sworn statements, Owens would not have been entitled to an evidentiary hearing because the evidence strongly demonstrates that the officers carefully attempted to corroborate the statements of the informant and believed them to be true.

The affiants confirmed a description of Owens' residence given by the informant. II R. 68, 87. They also confirmed with postal authorities that Thompson lived at 2218 Henry Rd. and that Owens lived at 2230 Henry Rd. II R. 69, 87. In addition, officer Harper wrote down the registration plate number of a Pontiac near the residence and discovered that it was registered to Owens. II R. 71–72. The affiants showed a photo spread to the informant, although he was unable to positively identify Owens. II R. 72, 79.

The informant had told the officers that he had been to Owens' house and while there smelled a pungent chemical odor and observed a chemical process which officer Harpster thought was the manufacturing of methamphetamine. II R. 70–71. The affiants had the informant obtain methamphetamine from Owens through Thompson. II R. 70. They also obtained a rap sheet on Donald Freeman Owens which indicated a number of convictions. II R. 73–74. The officers advised the informant that he could be prosecuted for giving false information.[12] The affidivit describes in detail the efforts by the affiants to corroborate the information received from the informant.

We think this is ample evidence that the affiants did not deliberately falsify their affidavits or recklessly disregard the truth. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. Owens did not make a substantial showing that Harper and Nestor knew of, or recklessly disregarded the truth, and that showing is necessary to entitle him to a *Franks* hearing. *Id.* Owens has not identified any evidence which Mr. Farrah could have included in an offer of proof or in affidavits which would have made the substantial preliminary showing that *Franks* requires. Thus Owens did not have a meritorious Fourth Amendment claim for a *Franks* hearing.[13] Without a meritorious Fourth Amendment claim such as he asserts, Owens' Sixth Amendment claim fails and he is not entitled to habeas relief. *See Kimmelman*, 477 U.S. at 375, 106 S.Ct. at 2582–2583.

---

**11.** Farrah attempted to subpoena Thompson, but was unable to effect service. II R. 16. Farrah did not obtain Thompson's affidavit to support the motion to suppress. II R. 16.

**12.** The affidavit states that "[t]he affiants advised the informant that if its information is false, the informant is likely to be prosecuted for the criminal charges, and the false information will be provided to the District Attorney or sentencing authorities."

**13.** Our holding that the Owens does not have a meritorious Fourth Amendment claim is based solely on his failure to make a substantial preliminary showing that the affiants knowingly, or with reckless disregard for the truth, falsified the affidavit. We note that even if Owens had made that showing, he would still have to show that absent the challenged material, there was insufficient content in the warrant affidavit to support a finding of probable cause to have a meritorious Fourth Amendment claim. *Franks*, 438 U.S. at 171–172, 98 S.Ct. at 2684–2685. We do not reach this issue.

### B.
### The Ineffective Assistance of Counsel Claim

If Owens had established a meritorious Fourth Amendment claim he would still be required to show under *Strickland* that he had been denied his Sixth Amendment right to effective assistance of counsel. "Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim ..., a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas prisoners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." *Kimmelman*, 477 U.S. at 382, 106 S.Ct. at 2586–2587. Hence we address briefly the merits of Owens' Sixth Amendment claim.[14]

█ The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2063. An ineffective assistance claim has two components. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. at 2064. The proper standard for attorney performance is "that of reasonably effective assistance." *Id.* Judicial scrutiny of counsel's performance must be highly deferential and we must indulge a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104

S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

█ "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* 466 U.S. at 691, 104 S.Ct. at 2066. Any deficiencies in counsel's performance "must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692, 104 S.Ct. at 2067. Actual ineffective assistance claims such as this one, *see Kimmelman*, 477 U.S. at 384, 106 S.Ct. at 2587–2588, are subject to a general requirement that the defendant affirmatively prove prejudice. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. *Id.* He must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

█ In making this determination, we must consider the totality of the evidence before the judge and jury. *Id.* at 695, 104 S.Ct. at 2068–2069.[15] Here it was found that the defendant's convictions were supported by evidence from the various firearms dealers and other sources not obtained pursuant to the contested search warrant.[16] These factual findings are supported by the record. Therefore we agree that Owens was not prejudiced by evidence obtained in the search within the meaning

---

**14.** While our conclusion that Owens' Fourth Amendment claim lacks merit is dispositive, we will assume, for the sake of analysis, that Owens had established a meritorious Fourth Amendment claim and will go on to evaluate the Sixth Amendment claim. We discuss *Strickland* because the magistrate's proposed findings and recommended decision denied the § 2255 relief under *Strickland's* prejudice prong.

**15.** A court need not determine whether counsel's performance was deficient before deciding whether the defendant has been prejudiced as a result of alleged deficiencies. If it is "easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697, 104 S.Ct. at 2069.

**16.** After a *de novo* review of the magistrate's factual findings and recommended disposition and after written objections had been filed, the district court adopted the magistrate's proposed findings and recommended disposition. I R. 64. We review findings of fact in § 2255 cases under the clearly erroneous standard, *see Crail v. United States*, 430 F.2d 459, 460 (10th Cir.1970); *United States v. Arellanes*, 767 F.2d 1353, 1357 (9th Cir.1985) (magistrate's finding in § 2255 case reviewed under clearly erroneous stan-

of the *Strickland* standard under which he had "the burden of showing that the decision reached would reasonably likely have been different absent the errors." 466 U.S. at 696, 104 S.Ct. at 2069. Agent Fuller testified at the hearing that the gun receipts seized from Owens' home during the search either had nothing to do with the counts upon which the defendant was convicted or were receipts from Ron Peterson Guns. Fuller was already aware of those receipts as a result of his investigation of the gun store, an investigation that had taken place prior to the search. II R. 53–59, 65.

Owens' trial attorney, Mr. Farrah confirmed this testimony when asked why he did not appeal the denial of the motion to suppress:

> I'm quite certain that the evidence that was admitted against Mr. Owens was obtained from gun dealers, and the process of obtaining those had started before the search warrant. And the only evidence that was introduced against Mr. Owens that was as a result of the search warrant, direct evidence, was a .38 caliber pistol that was found in Miss Shelly Watkins' purse, and Mr. Owens was acquitted of that. And as far as where all this other, the investigation and so forth started, it started with an Officer Jim Martin a couple of years beforehand, it appeared to me, and I think the actual work by ATF in getting the firearms forms had started prior to the execution of the warrant.
>
> So I don't—I felt that it would have been a frivolous thing to raise because there was no evidence or fruits of the warrant which was introduced into evidence in the trial itself. That is not to say that I agree with the judge denying my motion without a hearing, however.

II R. 18.

The district court's finding that Owens' convictions were supported by evidence not obtained pursuant to the contested search warrant is not clearly erroneous. Given this finding and the overwhelming evidence against Owens, *see Owens*, Slip op. at 2, 5,[17] we agree with the district court that Owens failed to show prejudice.

AFFIRMED

---

dard), although the performance and prejudice prongs under *Strickland* involve mixed questions of law and fact which we review *de novo*. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. *See also Osborn v. Shillinger*, 861 F.2d 612, 626 n. 13 (10th Cir.1988).

**17.** The court's slip opinion in Owens' direct appeal, No. 84–1856, stated at p. 2 that "Owens testified in his own behalf, and, in the main, admitted doing the acts complained of by the government. His defense was that because of illiteracy there was no guilty knowledge on his part."