**UNITED STATES of America,
Appellant,**

v.

**John TEHFE, a/k/a Ali Tehfe, Samir Tehfe, Ali Bazzi, Issa Bassam, Nabil Nehmi, Adolfo Sanchez, a/k/a "Fifu", Andres Gueche, Benny Rodriguez, Luis Herrera, Samira Tehfe, Jose Luis Perez, a/k/a "Junior", Luz Rodriguez-Perez, Roberto Martinez, a/k/a "Papito", Appellees.**

**No. 83–5596.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 1, 1983.

Decided Dec. 6, 1983.

Certiorari Denied March 26, 1984.
See 104 S.Ct. 1679.

W. Hunt Dumont, U.S. Atty., Samuel Rosenthal (argued), Chief Appeals Div., Newark, N.J., for appellant.

Alexander Booth, Jr., Jersey City, N.J., Paul Casteleire (argued), Hoboken, N.J., for appellees.

Before ALDISERT, HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

This is an appeal by the United States from an order suppressing evidence secured from a wiretap. The district court found that at the time the application for a wiretap was filed there was insufficient current information on a defendant's criminal activity on which to authorize the tap. We conclude, however, that the state judge who approved the wiretap properly found probable cause to believe that the telephone in question was being used in a continuing criminal enterprise. Accordingly, the suppression order will be vacated and the case remanded.

Defendants Sanchez and Herrera were indicted for conspiracy and various violations of the federal narcotics laws. The district court granted their motion to suppress because information in the warrant affidavit about Sanchez was stale. No discussion as to Herrera's connection with Sanchez on the target telephone appears in the application for the wiretap or in the district court opinion. However, the Government represents that the issues raised here will have a substantial effect in its case against Herrera.

During 1982, federal and state authorities in New Jersey cooperated in the investigation of a large scale drug distribution ring that included John Tehfe as one of its principals. According to confidential informants, Tehfe smuggled heroin and cocaine through Miami, had a distribution network in Dearborn, Michigan, and made frequent trips to South America in connection with his cocaine business. Based on this infor-

mation, federal agents secured a wiretap order from a federal district judge to conduct electronic surveillance on Tehfe's telephone in Guttenberg, New Jersey.

The wiretap authorization under review in this appeal was sought by state officers on January 21, 1983. They applied to a judge of the Superior Court of New Jersey for permission to tap the phone registered to "R. Sanchez" at 22nd Street, Union City, New Jersey. The lengthy affidavit attached to the application for the warrant described Tehfe's and his associates' large scale drug smuggling and distribution operation in the period beginning in 1978 and allegedly still continuing. These activities were international in scope and included contacts with sources in Lebanon and Colombia.

According to the affidavit presented to the state court, an automobile registered to a known drug distributor was seen in the driveway of Tehfe's Guttenberg home in October 1982. On January 10 and 13 of 1983, only a few days before the application for the state wiretap was filed, another drug distributor's car was seen parked at Tehfe's residence. Pen register records also revealed that calls, including one on January 10, 1983, were made from a telephone at his home to other drug dealers in the months before the request for a wiretap was granted.

Tehfe, who also had a residence in Flushing, New York, had an interest in a New Jersey business known as Betty Fashions. He had given one confidential informant the telephone number of Betty Fashions to use if he wished to contact Tehfe about his drug business. Law-enforcement agents raided Betty Fashions in May 1982 and seized automatic weapons, over $14,000 in cash, and a quantity of marijuana. Moreover, an individual arrested for involvement in a heroin distribution conspiracy listed his occupation as a salesman for Betty Fashions.

The application sought permission to tap the 22nd Street Telephone in the belief that it was being used by the conspirators in "an extensive narcotics distribution enterprise of international dimension." A confidential informant was quoted as having personal knowledge that Adolfo Sanchez and Andres Gueche were distributing heroin from residences located at 22nd Street and 48th Street in Union City.[1] They told the informant that their source of supply was "somewhere in the Mid-West."

Telephone company records disclosed that the phone at 22nd Street was registered in the name of "R. Sanchez," and the phone on 48th Street was registered to "A. Sanchez." Each subscriber listed the other as a reference. Criminal records disclosed that Adolpho Sanchez had been arrested and convicted for narcotics offenses.[2]

An analysis of data supplied by pen registers revealed telephone communications between 22nd Street and Betty Fashions. In addition, calls were placed from both locations to telephones of two "documented drug violators." Another common number, called from both 22nd Street and Tehfe's residence, was that of a cafe in New York City frequented by known drug traffickers. The study of common phone numbers did not disclose when the various calls were made. The most recent events recited about the phone at 22nd Street consisted of calls placed to it from Tehfe's New York residence on January 16, 1983 and from Tehfe's New Jersey residence on January 17 and 19, 1983.

The affidavit also disclosed that Adolpho Sanchez was seen entering Tehfe's residence on one occasion. In December 1982, a month before the filing of the application,

---

1. Permission was also given to wiretap the telephone at the residence on 48th Street. However, state officials never followed through on that order.

2. In the district court, Sanchez contended that the affidavit's mischaracterization of his criminal record required suppression of the evidence. The court agreed that the "affidavit badly mischaracterized Sanchez's record," but concluded that suppression was not warranted. "Mischaracterizing the extent of his record and his conviction does not change the fact that Sanchez had been arrested and convicted for narcotics offenses." Appellees have not contested this aspect of the district court's opinion.

a major narcotics violator was seen entering the 22nd Street location.

In ruling on the suppression motions, the district judge found that the application for the tap on Tehfe's phone had satisfied the requirements of probable cause and had recited "facts sufficiently indicating relevant, protracted and continuous activity on Tehfe's part so as to cure or eliminate the arguable staleness of certain information in the affidavit." Tehfe's motion to suppress the evidence obtained from his telephone was denied, and he later entered a guilty plea.

Even though the state application contained much of the same information about the enterprise that was in the federal application for the Tehfe wiretap, the district court reached a different conclusion on the suppression motion with respect to the tap at 22nd Street. The district judge noted that the report by the confidential informant that Sanchez was distributing heroin from that address did not state when the events actually occurred. As the court read the affidavit, it "[a]t ... best ... establishes that, in or before October 1982, [the informant] *supplied information* concerning conversations with Sanchez." (Emphasis in the original.) Similarly, Sanchez's visit to the Tehfe residence was thought to be in October 1982.

The more recent visit of the drug trafficker in December 1982 to 22nd Street was considered to have little probative value because the affidavit did not establish that Sanchez lived there. In the same vein, the failure to provide information linking Sanchez to Tehfe and Betty Fashions diminished the significance of the associational factor suggested by the undated phone records. The district judge viewed the three calls from the Tehfe residences during the week preceding the wiretap application as indicating mere association, not probable cause.

The court acknowledged that the "affidavit does recite drug-related activities of other individuals that arguably appear 'continuous and protracted.' But it does not give any detail or facts showing Sanchez to be a part of these ongoing activities...." In conclusion, the court stated, "The affidavit does not sufficiently link Sanchez to the target premises and communication facility to satisfy the particular nuances of probable cause .... But even assuming the adequacy of the affidavit on that score, the court holds that the information ... was fatally stale."

After argument on the government's motion for reconsideration, the district court declined to reverse its suppression order. On appeal, the government argues essentially that the district court erred in focusing on Sanchez's possible culpability rather than on the probability that the telephone at the 22nd Street address was being used for criminal purposes.

■ In its most recent pronouncement on the interpretation of affidavits for search warrants, the Supreme Court cautioned that

> "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'
>
> \* \* \* \* \* \*
>
> [S]o long as a magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."

*Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (citations omitted). This does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions; it does require the application of a common sense standard. *United States v. Ventresca,* 380 U.S. 102, 108, 109, 85 S.Ct. 741, 745, 746, 13 L.Ed.2d 684 (1965); *see also Gates,* —— U.S. at ——, ——, 103 S.Ct. at 2331, 2333.

■ When reviewing an application, courts must also bear in mind that search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found. *Zurcher v. Stanford Daily,* 436 U.S. 547, 553–560, 98 S.Ct. 1970, 1975–1978, 56 L.Ed.2d 525 (1978). The affi-

davit in support of a warrant need not present information that would justify the arrest of the individual in possession of or in control of the property. Nor is it required that the owner be suspected of having committed a crime. Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant. *See Id.*

 These fourth amendment principles are the same in an authorization for a wiretap as in a property search. That the subscriber of the telephone service be suspected of unlawful activity is not a prerequisite to a wiretap authorization. As expressed in the statutory language, what is necessary is probable cause to believe that "an individual ... has committed or is about to commit a particular offense" and that "communications concerning that offense" may be intercepted from a designated facility. 18 U.S.C. § 2518(3) (1982); *see also* N.J.REV.STAT. 2A:156–10 (Supp. 1983–84).[3]

There are additional statutory restrictions, such as intercept minimization of "innocent" conversations, specific limitations on the duration of the tap, and demonstration by the applicant that other means of securing the evidence are not available or practicable. 18 U.S.C. § 2518(3), (5) (1982); N.J.REV.STAT. 2A:156A–10(c), 2A:156A–12 (Supp.1983–84). These latter considerations are not at issue on this appeal, however.

The application contains sufficient facts from which the state judge could find probable cause to believe that Tehfe and a number of his associates had been operating a well-organized drug smuggling and distribution ring for some years. The affidavit clearly implicated Tehfe in a far-reaching operation. Pen registers, as well as surveillance reports, revealed significant contact between Tehfe and a number of individuals who were known drug dealers. More than mere association was established by the affidavit. It revealed the existence of an extensive criminal enterprise that relied on the telephone as an important means of communication. There was ample justification to find that crimes were being committed and that evidence could be developed through wiretaps.

Having established that Tehfe had a criminal scheme in being, the state did not then have to provide evidence that Sanchez was part of the organization. What was required was sufficient information so that the state judge could find probable cause to believe that the 22nd Street phone was being used in the Tehfe operation.

An analogous issue was presented in *United States v. Hyde,* 574 F.2d 856, 862 (5th Cir.1978), where some defendants contended that their connection with the conspiracy was insufficiently set forth in the application for a wiretap. The court rejected the argument stating, "[W]e have never required that a defendant be named in a wiretap application. or accused of using the suspected telephone before evidence obtained by the wiretap can be used against him. One of the objects of wiretapping is to ascertain the full extent of participation in criminal activity, and we need not limit retrospectively the pool of potential defendants." *See also United States v. Martin,* 599 F.2d 880, 884–85 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979) (rebuffing contention that wiretap statute requires probable cause of criminal activity for each person named in application).

In determining whether a link existed between the target phone and the Tehfe

---

**3.** According to the district court, "[u]nder the New Jersey wiretap statute ..., a warrant application must satisfy the traditional requirements of probable cause, codified in the state and the almost identical federal statute." The parties do not disagree with this assessment of the statutory provisions and rely exclusively on federal case law to support their positions. We cannot quarrel with the approach taken by the district court or the parties, and discern no difference in the federal or state statute that implicates the issues raised on appeal. *See United States v. Vazquez,* 605 F.2d 1269, 1280 n. 26 (2d Cir.), *cert. denied,* 444 U.S. 981, 1019, 100 S.Ct. 484, 674, 62 L.Ed.2d 408, 649 (1979); *see also State v. Sanchez,* 149 N.J.Super. 381, 394–97, 373 A.2d 1028, 1034–36 (Law Div.1977) (suggesting differences between federal and New Jersey wiretap statute in other areas).

operation, Sanchez's drug-related activities would be relevant as would those of other visitors to the 22nd Street location. The affidavit discloses that at some time Sanchez distributed heroin from that address, and that a convicted drug trafficker came to that location on December 10, 1982. In January 1983 this individual had been observed driving another person to Betty Fashions and then dropping him off at 48th Street.[4]

Included in the affidavit was an analysis of phone calls between 22nd Street and other locations associated with the Tehfe operation. The time period covered by that study was not supplied; nevertheless, the phone history does furnish additional evidence of a connection between 22nd Street and the criminal enterprise at some time during its operation.

■ Taking a common sense approach to evaluating these facts, see Gates, —— U.S. at ——, 103 S.Ct. at 2332, the state judge could conclude that the 22nd Street phone was being used to further the aims of the Tehfe organization. The district judge's hesitancy to accept that view stems from his concern that much of the pertinent evidence was stale, and therefore should not be considered.

■ The concept of staleness is important in determining probable cause for a search but is not generally applicable to the showing required to issue an arrest warrant. In the arrest situation, the magistrate must find probable cause to believe that a crime has been committed and the person to be arrested is the culpable party. In that instance, the issuing officer is concerned with historical facts and probable cause will exist for an indefinite time. Passage of time will not usually alter the significance of the underlying facts.

■ An application for a search warrant differs in that it is necessary to establish that certain items are probably located at the present time in a certain place. It is not enough that the items may have been at the specified location at some time in the past—there must be probable cause to believe that they are there when the warrant issues. See generally 1 W. LAFAVE, SEARCH AND SEIZURE § 3.7(a) (1978).

■ The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched. See Id. In United States v. Harris, 482 F.2d 1115, 1119 (3d Cir.1973), the defendant, who was allegedly trafficking in drugs, contended that information in an application for a search warrant was stale. In rejecting that argument, we quoted approvingly from United States v. Johnson, 461 F.2d 285, 287 (10th Cir.1972), that when an activity is of a protracted and continuous nature "the passage of time becomes less significant." See also United States v. Forsythe, 560 F.2d 1127, 1132 (3d Cir.1977). We further observed that "protracted and continuous activity is inherent in a large scale narcotics operation."

■ The factors affecting staleness are more easily applied in cases of tangible property, rather than wiretaps. However, the rationale is still valid.

In United States v. Hyde, staleness was raised as a reason for suppression of wiretap evidence. There, the affidavit alleged a conspiracy that had continued for two years, contained information about events "less than 2 months old as well as the most recent telephone records available." 574 F.2d at 865. In finding the information in the affidavit was not stale, the court concluded that the state justice properly inferred that telephone communications that had been occurring for two years "had not mysteriously stopped within the past month." Id. The court also stated that the liberal examination given staleness in a protracted criminal conduct case "is even more defensible in wiretap cases than in ordinary warrant cases, since no tangible objects

---

**4.** The affidavit states that this event occurred in 1982. In the context of the order of events described in the affidavit, we believe that the 1982 date was a typographical error and that the event probably occurred in 1983. In any event, if the 1982 date is in fact the correct one, that circumstance would not affect our disposition of this case.

which can be quickly carried off are sought." *Id.; see also United States v. Martino,* 664 F.2d 860, 866–67 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *United States v. Webster,* 639 F.2d 174, 178–79 (4th Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981), *modified on other grounds,* 669 F.2d 185 (4th Cir.), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982); *United States v. Weinrich,* 586 F.2d 481, 491 (5th Cir.1978).

██ In this case, ample information in the affidavit shows that the Tehfe operation was one of several years standing. The staleness issue, therefore, should be construed liberally. The district judge, however, limited the inquiry to an "enterprise involving Sanchez and his targeted telephone." Viewing the circumstances from that vantage point, he found no "current suspicious or criminal behavior by Sanchez (or anyone else linked to the target premises)."

But there was recent information that would permit a finding that the Tehfe enterprise was connected with the 22nd Street phone. Indeed, in the week just before the application was presented, the pen register recorded calls from Tehfe to the targeted phone. Moreover, once the state judge was presented with sufficient facts to find that the Tehfe enterprise was a prolonged one that included a series of contacts with 22nd Street, the informant's allegations of drug dealing by Sanchez were no longer stale. They lent themselves to a reasonable belief that while the enterprise was continuing so was Sanchez's connection with it.

The district judge's construction of the affidavit was a careful and intelligent one—it was, however, not the only permissible one. The state judge's reading of the affidavit to establish probable cause is also defensible, and the determination of probable cause was entrusted to him in the first instance. We cannot say he erred in viewing the affidavit as establishing probable cause that the 22nd Street phone played a part in a long-standing criminal enterprise.

In summary, we conclude that the state judge did not err in finding probable cause

to issue the wiretap authorization. Accordingly, the order of the district court directing suppression of the evidence secured as a result of that wiretap will be vacated and the case remanded for further proceedings consistent with this opinion.