**UNITED STATES of America, Plaintiff,**

v.

**Andrew Eugene WHITE, Defendant.**

**No. 88–4–01–CR–2.**

United States District Court,
E.D. North Carolina,
Elizabeth City Division.

Jan. 20, 1989.

Rocco J. deGrasse, Asst. U.S. Atty., Raleigh, N.C., for plaintiff.

Richard L. Cannon, III, Greenville, N.C., for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the court upon defendant's motion to suppress. The Honorable Wallace W. Dixon, United States Magistrate, filed a Memorandum and Recommendation on this motion December 12, 1988, to which the government has filed objections. The magistrate recommended that defendant's statements and the evidence obtained by reason of those statements be suppressed. For the reasons stated below, the court declines to adopt this recommendation and denies defendant's motion.

### I.

An evidentiary hearing was held before the magistrate on this motion. The court has independently reviewed the record of that hearing and, on that basis, makes the following findings of fact:

Sheriff Joseph L. Lothian of the Perquimans County Sheriff's Department applied for a search warrant before County Magistrate Broughton T. Dail, Sr. on December 23, 1987. In support of that application, Sheriff Lothian submitted an affidavit summarizing his law enforcement credentials and describing the premises to be searched. The affidavit also contained the following statement in support of probable cause:

The undersigned represent (sic) that based upon the foregoing facts and circumstances and his police experience there is probable cause to believe that there is presently located at the residence described in this affidavit an amount of cocaine, crack, and other controlled substances. Earlier today, a confidential informant, who has provided accurate information in the past that has led to numerous successful investigations and arrests, related that Andrew White was keeping large quantities of controlled substances in the mobile home described in this affidavit and was selling same to numerous individuals that went to the mobile home described herein. The confidential informant has personally purchased and seen quantities of the controlled substances described herein.

A warrant was issued on December 23, 1987, authorizing a search of defendant's person, defendant's residence, and the vehicles on the premises.

That same day Sheriff Lothian went with five or six police officers to defendant's residence to execute the warrant. Defendant was outside his residence, a mobile home, when Sheriff Lothian advised him of and read to him the search warrant. Defendant was asked to go inside the trailer, where the officers found seven other people. The occupants were asked to remain in the living room area of the trailer while the search was conducted. All of the occupants, including defendant, were strip-searched.

Near the end of the search of the mobile home, when the officers were preparing to go outside and search the vehicles, defendant approached one of the officers, Sergeant Logan, and said, "Man, you've got to help me." The officer asked what he meant, and defendant said that if they—meaning the other officers—got in his car, he would "be fucked." Sergeant Logan asked which car he was referring to, and defendant indicated the black Grand Prix. Defendant also said that Josie, one of the occupants in the mobile home, had a key to the car. Sergeant Logan asked Josie for the key, and she said she did not know what he was talking about. Sergeant Logan told defendant what Josie had said, and defendant stated that he would get the key. He walked over to Josie, got a key from her, and handed it to Sergeant Logan. Defendant told him the key would unlock the door, trunk, and glove box of the Grand Prix, and that the "stuff" was locked in the glove box in a plastic container. Sergeant Logan, accompanied by a second officer, went outside and found cocaine in the Grand Prix where defendant had said it would be. When Sergeant Logan went back inside the mobile home, defendant asked, "Did you find it?", and he replied, "Yes." Defendant then asked if he would help him, and the officer responded that he was not going to jail for anyone. Defendant was then arrested and informed of his Miranda rights.

II.

■ Defendant moves to suppress the statements made to the officer and the evidence seized as a result of those statements, contending that the statements were made involuntarily and in violation of his Miranda rights. This argument is meritless. The court agrees with the magistrate that

it is clear ... that defendant's statements to Logan on their face were wholly voluntary. No evidence was adduced to show coercion, threats, or even questioning of a routine nature which might have prompted defendant's remark concerning his perceived hopelessness if the officers got around to searching his car. *See, e.g., Colorado v. Connelly* [479 U.S. 157], 107 S.Ct. 515 [93 L.Ed.2d 473] (1986) (absent coercive conduct by police and a causal connection between that conduct and a defendant's statements, involuntariness not shown); *United States v. Jones,* 818 F.2d 1119 (4th Cir. 1987) (central principle of *Miranda* requires both police custody and police interrogation without advice of rights before exclusionary rule applies). *See also Arizona v. Mauro* [481 U.S. 520], 107 S.Ct. 1931, 1935 [95 L.Ed.2d 458] (1987) (not just direct questioning must be considered in assessing voluntariness but the functional equivalent of questioning —any words or actions which police know are likely to elicit incriminating responses—must also be considered).

Mem. and Rec. at 6.

■ Defendant also argues that the search warrant was unsupported by probable cause and therefore invalid

because it is based, at least, in part on statement [sic] by an unidentified confidential informant. Defendant is informed and believes that the statements regarding this defendant by the so-called informant are unreliable.

As the magistrate pointed out, this argument amounts to nothing more than a "bald conclusion." Mem. and Rec. at 2, n. 1. Defendant has presented no evidence to contradict Sheriff Lothian's sworn testimony that the informant relied upon in the affidavit "broke probably five or six, at

least of [sic] five or six breaking and entering cases for us, led to two major narcotics arrests, and probably four or five other minor narcotics arrests." An informant's credibility may be established on the basis of previous instances of reliability. *United States v. Sumpter*, 669 F.2d 1215 (8th Cir. 1982). Here the affidavit set forth not only past instances of the informant's reliability, but his personal observations, which are sufficient to establish the reliability of the information provided. *See United States v. McEachin*, 670 F.2d 1139 (D.C.Cir.1981). The court finds that the affidavit contained sufficient indicia of the informant's reliability to support a finding of probable cause.

The informant's reliability was the only ground asserted by the defendant against the existence of probable cause. However, the magistrate identified *sua sponte* a more serious problem which was the basis of his recommendation to grant the motion to suppress: the affidavit's failure to specify when the alleged criminal activity was observed. The magistrate felt that this deficiency fatally flawed the search warrant:

> For all the information disclosed in the four corners of the probable cause statement, the criminal activity could have occurred the previous week or the previous year. The reasoned application of search and seizure principles does not allow for that sort of speculation.

Mem. and Rec. at 9–10. The magistrate then determined that the good-faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was not applicable and that the house search and arrest of defendant were therefore illegal.[1] He concluded that "while defendant's statements to Logan were voluntary, they were nevertheless tainted by the illegal police activity of the initial arrest and house search without probable cause." *Id.* at 17.

### III.

A magistrate's determination of probable cause is "a practical, common-sense deci-

sion whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The duty of a reviewing court is "simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.*, 462 U.S. at 238–39, 103 S.Ct. at 2332.

■ The court finds that a common-sense reading of the affidavit in question here provides a substantial basis for Magistrate Dail's determination of probable cause. The last two sentences of the affidavit stated:

> Earlier today, a confidential informant, who has provided accurate information in the past that has led to numerous successful investigations and arrests, related that Andrew White was keeping large quantities of controlled substances in the mobile home described in this affidavit and was selling same to numerous individuals that went to the mobile home described herein. The confidential informant has personally purchased and seen quantities of the controlled substances described herein.

Taken literally, the phrase "was selling" does not, as Magistrate Dixon observed, indicate a specific temporal period in which the selling occurred. However, a literal interpretation is not the only reasonable interpretation of this language. When taken in conjunction with the statement that the informant had personally purchased and seen the controlled substances and that he had communicated this information "earlier today," the magistrate could reasonably conclude that the information was current. Such a conclusion is consistent with the Supreme Court's recognition that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965).

---

**1.** The magistrate also determined that "defendant was under a *de facto* arrest by reason of the intrusive nature of the strip search." *Id.* at 14. Neither this conclusion, nor the conclusion that

*Leon* is inapplicable, need be reviewed here, since the court concludes that the search warrant was supported by probable cause.

Magistrate Dixon's construction of the affidavit, like the district judge's construction in *United States v. Tehfe,* 722 F.2d 1114, 1120 (3rd Cir.1983), "was a careful and intelligent one—it was, however, not the only permissible one. The state judge's reading of the affidavit is also defensible, and the determination of probable cause was entrusted to him in the first instance." Like the court in *Tehfe,* this court cannot say the state judge erred in viewing the affidavit as establishing probable cause.

This court's ruling, however, should not be construed as a recommendation that the affidavit on which the warrant issued in this case serve as a model for future use. A magistrate should not have to engage in an interpretive exercise when reading an affidavit. "Reasonable interpretation" can easily mask impermissible vagueness and ambiguity in the affidavit, and this court will remain alert to such deficiencies.

Accordingly, defendant's motion is hereby DENIED.

SO ORDERED.