**UNITED STATES of America, Plaintiff,**

v.

**LEON–CHAVEZ, Uriarte, and Zamora–Anaya, Defendants.**

**Civ. No. 92–CR–26B.**

United States District Court,
D. Utah C.D.

Aug. 31, 1992.

Richard D. McKelvie, Salt Lake City, for plaintiff.

Mary C. Corporon, Ronald J. Yengich, R. Steven Chambers, Loni F. Deland, Salt Lake City, for defendants.

## ORDER

BENSON, District Judge.

This matter was referred to Magistrate Judge Ronald N. Boyce pursuant to 28 U.S.C. § 636(b)(1)(B). On March 12, 1992, and March 18, 1992, the Magistrate Judge heard oral argument on defendants' motion to dismiss, motions in limine, and motions to suppress. On May 11, 1992, the Magistrate Judge issued an Order denying the motions in limine without prejudice. On May 18, 1992, he issued a Report and Recommendation. The Magistrate Judge recommends that the motion to dismiss and the motions to suppress be denied. Each defendant has filed Objections to the Report and Recommendation. Defendant Zamora–Anaya also objects to the denial of the motions in limine.

On August 27, 1992, a hearing on defendants' Objections was held before the district court. The court, having made a *de novo* review of defendants' Objections and having heard oral argument from counsel, finds that the Magistrate Judge was correct in his legal interpretation and factual conclusions. Based on this finding, defendants' Objections are overruled, and the Report and Recommendation of the Magistrate Judge is accepted pursuant to 28 U.S.C. § 636(b)(1)(C). Accordingly,

IT IS HEREBY ORDERED that the May 11, 1992, Order of the Magistrate Judge is AFFIRMED. Defendants' motions in limine are denied without prejudice.

IT IS FURTHER ORDERED that the May 18, 1992, Report and Recommendation of the Magistrate Judge is adopted in its entirety. Defendants' motion to dismiss and motions to suppress are DENIED.

DATED this 31st day of August, 1992.

## REPORT AND RECOMMENDATION

BOYCE, United States Magistrate Judge.

Eleazar Leon–Chavez, Eduardo Uriarte, and Carlos Zamora–Anaya have been indicted on one count of possession of five kilograms or more of cocaine with intent to distribute (File Entry # 1). Defendants Eleazar Leon–Chavez and Carlos Zamora–Anaya have filed motions to suppress (File Entries # 23 and # 24). The motions do not comply with D. Utah Rules 307(b) and 202(a) because defendants do not state the basis for their motions with specificity. Subsequently, Carlos Zamora–Anaya filed a motion to dismiss the indictment because "no probable cause existed for his arrest or detention" (File Entry # 33).[1] Eduardo Uriarte made a separate motion to suppress (File Entry # 37).[2] Later he made a second motion to suppress evidence obtained from the premises at 815 North 1400 West, Salt Lake City, Utah (File Entry # 48). This motion was also supported by a memorandum (File Entry # 49). Chavez thereafter filed a motion to suppress evidence from the same residence and a vehicle on the premises (File Entry # 51).

The motions to suppress were referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). Hearing on the motions to

---

1. A memorandum in support of Zamora–Anaya's motion was filed (File Entry # 34).

2. Uriarte supported his motion to suppress by a memorandum (File Entry # 38) as did Chavez (File Entry # 39).

dismiss and suppress was held. This report and recommendation is submitted pursuant to the reference and on the motions of the defendants.

### Discussion of Evidence

Two separate hearings were held on the motions, one on March 12, 1992 and one on March 18, 1992.

At the hearing on March 12, 1992, it was stated that two separate police searches were made. One was the search of a storage area where cocaine was found. A second search was made of a residence at 815 North 1400 West and a 1982 Ford automobile parked at the residence. This search was made on January 17, 1992. Weapons were found, $127,000 in cash, and apparently some photographs were seized (Tr. p. 6–8). The charge in this case refers to the cocaine found in a storage unit at Unit K–68 at National Self Storage (File Entry # 1, Tr. p. 8).

William F. McCarthy of the West Valley City Police Department testified as to the arrest of defendant at the National Self Storage unit (Tr. p. 21). McCarthy is assigned to the Drug Enforcement Task Force. On January 17, 1992 he executed a search warrant on a shed at National Self Storage at 350 South Redwood Road. McCarthy was the affiant (Tr. p. 22). McCarthy had received information from the storage unit management that one Albert Garcia had rented shed K–68. The management was suspicious of activities including people coming and going and different people with Garcia. The address Garcia had given the storage company was a fictitious address (Tr. p. 22). McCarthy pursued the investigation. He found an Albert Garcia at 815 North 1400 West for whom the social security number was the same given to the storage unit. Vehicles registered at that address matched vehicle information obtained form the storage company (Tr. pp. 23–24). A K–9 dog was obtained and several sheds were approached to have the dog react to. The dog had a record of 95% accuracy for the detection of narcotics (Tr. p. 25). McCarthy was present when the dog was run past the storage units (Id.). One was the target of the investigation; four or five units were involved in the sniff (Tr. p. 26). The dog expressed no interest in any shed until he came to K–68. This was the shed rented by Albert Garcia. When the sniffer dog reached K–68 he tried to tear off the door. Thereafter, the dog showed no interest in other sheds. The reaction, according to the dog's trainer, indicted the presence of narcotics (Tr. p. 27). Albert Garcia also had a criminal history. A search warrant for the storage unit was obtained by Officer McCarthy (Id.).

At 10:30 a.m. on January 17, 1992 McCarthy began a surveillance on the storage unit. At about ten minutes after 5:00 p.m. a utility type pickup truck arrived carrying the three defendants. The management of the Unit said they were persons who had been seen there before (Tr. pp. 27–28). McCarthy, with a customs officer, followed the truck and it parked in front of the storage shed. Zamora–Anaya was at the right rear of the truck (Tr. p. 28). Zamora was looking around, as if checking for anyone (Id., 29). There was no doubt in McCarthy's mind that Zamora was a lookout. The customs officer joined McCarthy and he ran towards the truck telling the individuals they were police (Id. p. 29). Defendants Uriarte and Chavez came out of the storage shed. Later, McCarthy went into the shed and searched an open package of cocaine which was on a television set (Tr. p. 30). The cocaine was on the top of a color console table (Tr. p. 30). The package had a "V" cut in it and appeared to be just opened because cocaine residue was still on a razor on top of the box and the console table (Tr. p. 30). Ten or more kilos were obtained from the unit (Tr. p. 30).

When the truck arrived at the storage company the three defendant were in it. Uriarte and Leon–Chavez got out of the truck and went into the shed (Tr. pp. 30–32). Prior to executing the search warrant, and making the arrest of the suspects McCarthy had no specific information on Zamora–Anaya (Tr. p. 32). The storage manager had first provided the police with the information. Zamora–Anaya got out of

the truck and stood to its rear close to the shed door. This was where he was when McCarthy approached.

A white Ford was observed at the premises at 815 North 1400 West which was later searched with a warrant and two machine pistols and $127,000 in cash found. This was after the shed search (Tr. pp. 33–34). The storage unit manager had described the persons coming to the shed as hispanic males (Tr. p. 35). The storage unit manager had indicated people using a flat bed truck had moved some furniture into the unit (Tr. p. 35).[3]

Zamora–Anaya was just a few feet, the width of the truck from the entrance of the storage shed, when the other two were inside the shed (Tr. pp. 38–39). Officer McCarthy approached Zamora–Anaya with his gun and told him to freeze. According to McCarthy, Zamora–Anaya was not free to go but not under arrest. McCarthy then put Zamora on the ground and called the other two individuals out from the storage unit (Tr. p. 40). All were handcuffed. One had cocaine on him. They were advised they were under arrest after they were picked up form the ground (Tr. p. 41). McCarthy had seen a kilo of cocaine on the counter top in the shed. That was when he indicated defendants were under arrest (Tr. p. 41). McCarthy could see the cocaine before he entered the shed (Tr. p. 42). It was in a green cardboard box about a foot long and two inches wide (Tr. p. 42). There was a razor cut in the top of the box (Id.).

On March 18, 1992 defendant Eleazar–Leon–Chavez testified (Tr. p. 18).[4] He testified that on January 17, 1992 he was residing at 815 North 1400 West in Salt Lake City (Tr. p. 19). He had the keys to the house and had been given permission to reside on the premises (Tr. p. 19). He invited defendants Eduardo Uriarte and Zamora–Anaya to reside there as well. Leon–Chavez was in charge of the premises (Id.). A Mr. Villa loaned the house to Leon Chavez (Tr. p. 19). Villa was a person Leon Chavez had met in Long Beach. Leon Chavez claimed Albert Garcia had

given him permission to use the storage shed. He was listed on the shed card as a person who was permitted access to it (Tr. p. 21). Leon Chavez knew nothing about the white car at the resident premises and never drove it nor had keys for it (Tr. pp. 22–23). He claimed no interest in the car (Tr. p. 23). Leon–Chavez and the other defendants had stayed at the residence for two weeks before Christmas, left, and came by on January 11, 1992 (Tr. p. 24). Zamora had been given permission to stay at the house by Leon Chavez (Tr. p. 26). Uriarte was also living at the house. The government had no evidence that Villa was not the owner of the house (Tr. p. 31). Based on the above evidence the magistrate judge enters the following findings of fact:

1. One Albert Garcia, not a defendant in this case, rented unit K–68 at National Self Storage in Salt Lake City, Utah. He gave a false address. The storage unit operators became suspicious that the unit was being used for illegal purposes by the short coming and going of persons to the shed. Police were notified. A police officer, McCarthy, of the Drug Enforcement Task Force, were told of persons coming and going to the unit and apparently not taking anything. The persons who came to the storage unit were young, hispanic and male. Officer McCarthy checked the address of the storage unit lessee and found it was fictitious. By checking a social security number he was able to trace the storage lessee. By a utilities check McCarthy found another residence for Albert Garcia at 815 North 1400 West in Salt Lake City, Utah. He was also able to determine that Albert Garcia had a criminal record of some kind in the State of California and was a fugitive. A driver's license and vehicle registration different from that provided to the storage unit manager was traced to Garcia.

2. Officer McCarthy obtained a trained and reliable narcotics dog. The dog's handler ran the dog in front of the storage unit

---

3. This was told to McCarthy after the search warrant was issued (Tr. p. 36).

4. The page citations are to the transcript of March 18, 1992.

sheds. About five sheds surrounding K-68 were inspected by the dog. The dog did not alert on any shed except K-68 and then the dog reacted violently and almost tore off the shed door. Based on the information he had, Officer McCarthy obtained a search warrant on January 17, 1992 from Utah Third Circuit Judge Michael Hutchings (See file exhibit). The warrant authorized the search of storage unit K-68 at National Self Storage, 400 South Redwood Road, Salt Lake City, Utah.

3. On January 17, 1992 Officer McCarthy with other task force officers nearby, held a stakeout of the storage unit K-68 at National Self Storage to determine who had been making access to the unit. The three hispanic male defendants arrived in a white truck. The defendants, Uriarte and Leon–Chavez, got out of the truck and entered storage unit K-68. The defendant, Zamora–Anaya, got out of the truck and acted as a lookout for the two defendants in the unit.

4. Officer McCarthy ran to Zamora–Anaya and identified himself as a police officer. McCarthy had his gun drawn. He placed Zamora on the ground and handcuffed him. McCarthy could see into the storage unit and see a package of cocaine with a "V" cut in it. A federal customs officer arrived and all three defendants were handcuffed and arrested.

5. Inside the storage shed, 10 kilos of cocaine or more was eventually found.

6. The defendants, Zamora–Anaya nor Eduardo Uriarte, had any legal interest or connection to the storage unit and were not lessees or persons authorized to use the unit. The defendant Eleazar Leon–Chavez was designated as a person authorized to enter the unit by Albert Garcia, who was lessee of the unit.

7. On January 17, 1992 a state search warrant was obtained by Sgt. Charles Illsley, DEA Task Force Officer, to search the residence at 815 North 1400 West, Salt Lake City, Utah and a 1982 Ford truck parked at the residence. The defendants had been residing at the premises. The defendant Leon–Chavez had permission to use the premises from a person who was either the owner or lessee. Leon–Chavez gave permission for defendants Zamora–Anaya and Uriarte to stay on the premises. No defendant had any interest, nor has claimed an interest, in the 1982 Ford truck. They do not claim to have had any connection with the vehicle. A search of the vehicle revealed two machine pistols and $127,000 in cash.

### Discussion

### The Motion to Dismiss

■ The defendant Zamora–Anaya has made a motion to dismiss the indictment as to him. He claims his arrest was not based on probable cause and that this taints the indictment and precludes his prosecution.

An arrest is based on probable cause when there exists facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, which are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *United States v. Miller*, 532 F.2d 1335 (10th Cir.1976); *United States v. Matthews*, 615 F.2d 1279 (10th Cir.1980); *United States v. Hansen*, 652 F.2d 1374 (10th Cir.1981); *United States v. Borrelli*, 621 F.2d 1092 (10th Cir.1980); *United States v. Chavez*, 812 F.2d 1295 (10th Cir.1987); *United States v. Maher*, 919 F.2d 1482 (10th Cir.1990). The evidence need not be sufficient to prove guilt. *Holt v. United States*, 404 F.2d 914, 919 (10th Cir.1968); *United States v. Matthews*, supra. However, the evidence must be more than mere suspicion. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *United States v. Espinosa*, 771 F.2d 1382 (10th Cir.1985). The standard is an objective one, *United States v. Salinas–Calderon*, 728 F.2d 1298 (10th Cir.1984).

In this case, Officer McCarthy had information from the managers of the storage unit that there was unusual coming and going from the unit and that this was by young hispanic males. Nothing was taken

from the unit that could be observed. The lessee of the unit had provided a false address and was a fugitive with an apparent criminal record. An experienced, trained, and proven narcotics dog had strenuously alerted to the presence of narcotics in the storage unit.[5] See *United States v. Williams*, 726 F.2d 661, 663 (10th Cir.1984); *United States v. McCranie*, 703 F.2d 1213 (10th Cir.1983); *United States v. Bell*, 892 F.2d 959, 968 (10th Cir.1989); *United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990) (dog alert provides probable cause); *United States v. Morin*, 949 F.2d 297 (10th Cir.1991) (dog sniff provided probable cause); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir.1989) (once the dog "keyed" the police had probable cause to believe the automobile contained narcotics). See also *Florida v. Royer*, 460 U.S. 491, 505, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229 (1983); *United States v. $67,220 in United States Currency*, 957 F.2d 280, 285 (6th Cir.1992) ("dog reaction is at least strong evidence of connection to drugs").

In addition, Zamora–Anaya was acting as a lookout when the other two went into the unit. At this point officer McCarthy had probable cause to arrest Zamora–Anaya. McCarthy approached Zamora–Anaya and the officer identified himself as a police officer. He placed Zamora–Anaya on the ground and handcuffed him to control him until the others could be seized and until assistance from other officers could arrive. If an arrest occurred at that time, McCarthy had probable cause. McCarthy characterized it as not being an arrest until a short time later when all three defendants were seized and placed under arrest. In the interim, McCarthy had observed a package of cocaine in the storage unit. At either point, the arrest of Zamora–Anaya was based on probable cause and was a valid arrest. Therefore, the defendant's motion to dismiss on the basis of an illegal arrest should be denied.

■ Further, the defendant Zamora–Anaya's basic proposition that an illegal arrest destroys jurisdiction is without merit. The illegal acquisition of jurisdiction over a defendant does not require dismissal of an otherwise validly based prosecution. *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Payton v. New York*, 445 U.S. 573, 592 n. 34, 100 S.Ct. 1371, 1383 n. 34, 63 L.Ed.2d 639 (1980). An illegal arrest does not vitiate an indictment or deprive the court of jurisdiction. *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *United States v. Weber*, 668 F.2d 552 (1st Cir.1981); *United States v. Pineda–Chinchilla*, 712 F.2d 942 (5th Cir.1983); *United States v. Darby*, 744 F.2d 1508 (11th Cir. 1984); *United States v. Studley*, 783 F.2d 934 (9th Cir.1986); *United States v. Yunis*, 924 F.2d 1086 (D.C.Cir.1991); *United States v. Vreeken*, 603 F.Supp. 715 (D.Utah 1984) affirmed 803 F.2d 1085 (10th Cir.). Zamora–Anaya's motion to dismiss should be denied.

### Motions to Suppress

■ The defendant Zamora–Anaya made a motion to suppress evidence seized in "any search." (File Entry # 23). An identical motion was made by Leon–Chavez. (File Entry # 24). Zamora–Anaya filed a memorandum in support of the motion. The memorandum contends the search warrant for the storage shed was legally insufficient. (File Entry # 34, p. 2). Zamora–Anaya also challenges the alleged factual inaccuracies in the storage unit search war-

---

**5.** Defendant Chavez relies on *Doe v. Renfrow*, 475 F.Supp. 1012 (D.N.D.Ind.1979) for the proposition that the dog's alert alone is insufficient to establish probable cause. *Id.* p. 1024. However, the court's reasoning is unpersuasive both in physics and law. A dog will not alert unless its nose is bombarded with molecules of the narcotic substance. That means the substance must be present in some quantity. An odor does not occur without molecular presence. Second, only probable cause is required. Hypothetical alternative excuses (might have beens) do not diminish the actual probability. Finally, the cases from higher federal courts and this circuit hold a dog sniff is sufficient for probable cause. *Renfrow* found the search to be based on probable cause with other facts.

rant. However, nothing in the memorandum showed any material factual inaccuracy by the *affiant.* (See File Entry 34 pp. 5–6). Eventually, the defendant Zamora–Anaya filed an affidavit challenging the search warrants for Unit K–68 and the residence at 815 North 1400 West. The defendant states that he in fact removed items from the storage shed. However, the warrant recites that Officer McCarthy was told by the managers of the unit that suspects did not bring items in or out. Zamora–Anaya's affidavit does not prove that the managers didn't tell McCarthy what he states in the warrant affidavit. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) requires the falsity be in the statements of the "affiant," not statements of others, *United States v. Schauble,* 647 F.2d 113, 117 (1981). The same is true as to the statement about Garcia being present with different people (File Entry # 35, p. 3). Zamora–Anaya merely states he was not present with Garcia. The affidavit does not say Zamora–Anaya was present, but only that Garcia was present with different persons on each occasion. There is no showing the statement in the warrant is false. Further, the material is not shown to be such that without the information the affidavit would lack probable cause. *United States v. Schauble,* supra; *United States v. Owens,* 882 F.2d 1493 (10th Cir.1989); *United States v. Orr,* 864 F.2d 1505, 1508 (10th Cir.1988); *United States v. Barrera,* 843 F.2d 1576, 1579 (10th Cir.1988). The defendant did not establish a basis for a *Franks* hearing or for a collateral attack to the warrant for storage unit K–68.

■ The defendant Zamora–Anaya also filed a challenge for the affidavit in support of the warrant to search the premises at 815 North 1400 West in Salt Lake City (File Entry # 35). The warrant is challenged because of references to the information challenged in the storage unit warrant, incorporated by reference. However, as noted before that warrant was not defective in any particular. The only misstatement, in the warrant for the residence, is that on page two of the affidavit for the search warrant where it is said, McCarthy

"served the warrant at K–68 while three suspects were inside." Actually two suspects were inside and Zamora–Anaya was outside acting as a lookout. The statement is not materially significant. Further, the affidavit for the search warrant for the residence premises was made by Sgt. Charles Illsley not McCarthy. There is no showing that Illsley knew the statement to be false. Therefore, the *Franks v. Delaware,* supra, challenge to the affidavit for the residence search is not valid. *United States v. Owens,* supra.

The motion of Uriarte does not specifically challenge the searches by attempting a collateral attack on the warrants (File Entry # 37). Uriarte's memorandum is limited to the facial sufficiency and adequacy of the warrants. No *Franks v. Delaware,* supra, issue has been asserted by Uriarte.

■ Eleazar Leon–Chavez' first motion to suppress did not specify any basis for the motion (File Entry # 24). Chavez' second memorandum is limited to a challenge to the search of the premises at 815 South 1400 West and no challenge is made to the K–68 storage shed search. The first memorandum (File Entry # 39) does pertain to K–68, but does not attempt a collateral attack on the warrant. The defendant Leon–Chavez does not challenge the affidavit for the search of the storage unit on the basis of *Franks v. Delaware,* supra (File Entry # 39). Therefore, any challenge to the warrant for the search of unit K–68 must be rejected to the extent that a collateral attack on the warrant is urged.

### Standing

■ Each of the defendants has made a challenge to the search of the premises at 815 South 1400 West. The evidence shows each defendant had access to the premises based on permission from the premises lessee or owner. Each defendant had been living at the premises for several days before the search. Under these circumstances, the defendants have standing to contest the search of the residence. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct.

1684, 109 L.Ed.2d 85 (1990); *United States v. Donnes,* 947 F.2d 1430 (10th Cir.1991).

However, with regard to storage unit K–68 the defendants' positions are not as supportive of standing. First, defendant Uriarte has shown no connection with the unit except his presence inside it on January 17, 1992. He was not the lessee of the unit or otherwise shown to have any interest or connection to the unit. He has not testified, or provided evidence as to standing based other means. He has not shown any interest of any kind in the storage unit. Second, the defendant Zamora–Anaya is in the same position except there was no evidence given at the hearing that he was ever inside the unit. Although the affidavit of Zamora–Anaya in support of his motions (File Entry # 35) states he went to the storage unit on January 17, 1992 "and on two or three occasions during approximately four days immediately prior ...", the affidavit states that on each occasion he "borrowed tools he needed to do maintenance on the house ..." The only entry into the shed was to "borrow" tools from the shed. There is no claim of any form of right or interest in the storage unit.

Under the above circumstances, it cannot be said that Uriarte or Zamora–Anaya could claim any expectation of privacy in the storage unit which society would be willing to accept. Without such expectation of privacy, the two defendants have no standing to contest the search of the unit. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The unit was leased to Albert Garcia. There is no evidence that Garcia authorized any interest in the unit for Zamora–Anaya. Therefore, he has no standing to contest the storage unit search. *United States v. Tobin,* 890 F.2d 319, 324 (11th Cir.1989) (defendant lacked standing to challenge search of another's house to which he had limited access); *United States v. Dodds,* 946 F.2d 726 (10th Cir.1991) (defendant had no standing to challenge officer's entry into a vacant apartment despite defendant's claim he had previously used the apartment as a sleeping place); *United States v. Ruck-*man, 806 F.2d 1471 (10th Cir.1986) (defendant had no standing to contest search of a cave on BLM land in spite of the defendant living in the cave); *United States v. Carr,* 939 F.2d 1442 (10th Cir.1991) (defendant had no standing to contest search of a motel room not registered to him where defendant's connection was minimal); see also *United States v. Hansen,* 652 F.2d 1374 (10th Cir.1981); *United States v. Guthrie,* 931 F.2d 564 (9th Cir.1991) (defendant could not challenge search of a warehouse in which he had no interest); *United States v. Skowronski,* 827 F.2d 1414 (10th Cir.1987). Therefore, Uriarte and Zamora–Anaya have no standing to challenge the search of storage unit K–68.

Defendant Leon–Chavez is in a different situation. He claims he was listed on the storage unit rental agreement as a person who had alternative access to the unit (File Entry # 39, p. 3). The memorandum of defendant refers to Exhibit I attached to the memorandum as showing Chavez' interest. No exhibit I is attached to the memorandum. However, on request of the magistrate judge, counsel for Leon–Chavez did provide the court with a copy of the "agreement for rental storage space." The agreement is in the name of Albert Garcia. Chavez is not mentioned on the agreement itself nor did he sign it. However, on the "Tenant Ledger" for K–68, in a space for alternate name, "Eleazar Chavez" is listed. It cannot be determined with any clarity just what the tenant ledger does authorize, but it will be assumed it authorized Chavez to have access to unit K–68. This comports with Chavez' testimony at the suppression hearing. It is therefore concluded that Chavez had use of the unit and a sufficient interest to confer standing on him to contest the search of the unit as a copossessor.

Finally, the warrant for the search of the premises at 815 North 14th West also authorized the search of the 1982 Ford LTS vehicle on the premises. However, no defendant has shown any expectation of privacy with regard to the vehicle. No claim by any defendant has been made that he had any right to possess or use the

vehicle which was in front of the residence. The title and ownership are not shown to be in the name of defendant Leon–Chavez, the only defendant to testify, and he expressly disclaimed any interest in the vehicle. Under the circumstances no defendant has standing to challenge the search of the 1982 Ford LTS vehicle. *United States v. Jefferson*, 925 F.2d 1242 (10th Cir.1991); *United States v. Arango*, 912 F.2d 441 (10th Cir.1990).

### Search Warrant

A search warrant is sufficient if from the totality of the circumstances there is probable cause to believe contraband or evidence of a crime will be on the person or premises to be searched. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Search warrants are not to be read in a technical fashion but in a common sense and realistic manner. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949); *Matter of Carlson*, 580 F.2d 1365 (10th Cir.1978); *United States v. Wood*, 695 F.2d 459 (10th Cir.1982); *United States v. Rios*, 611 F.2d 1335 (10th Cir.1979). All that is required is a substantial basis for the warrant. *United States v. Reyes*, 798 F.2d 380 (10th Cir.1986). Only a probability is required. *United States v. Gibbons*, 607 F.2d 1320 (10th Cir.1979). This may be based on non-technical probabilities of every day life. *United States v. Haala*, 532 F.2d 1324 (10th Cir.1976). Further, it should be kept in mind that the warrant affidavit was obviously drafted by an officer in a hurried fashion to meet the exigency of circumstances. See *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (warrants should be read, understanding they are often drafted by officers in the press of an investigation).

 The search warrant for storage unit K–68 was issued on January 17, 1992 by a state circuit judge. It authorized the search of the unit and persons present at the time of the service of the search warrant. However, the search of defendants' persons, to the extent there is any evidence which was taken from any of them at the storage unit which the government intends to use at trial, was made contemporaneous with their lawful arrest. It has been previously determined there was probable cause to arrest defendant Zamora–Anaya. The same conclusion and evidence as to him applies equally to the other two defendants, except in addition, since they were in unit K–68 and McCarthy could see the package of cocaine where the other two were. The probable cause as to Leon–Chavez and Uriarte is therefore even stronger. The search of the three defendants was clearly incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

 The warrant for unit K–68 authorized a search for controlled substances, cocaine, marijuana, and all controlled substances. Paraphernalia and records allied to narcotics trafficking were also authorized for seizure. The affidavit recites the investigation of Albert Garcia for narcotics sales and the false address for Garcia given to the storage company and the apparent false driver's license number which was also provided at the time of the rental. A driver's license number for Albert Garcia for a California license was found which appears to show Garcia changed the last three numbers on the license from "666" to "777" on the storage rental agreement. A criminal record of "Garcia–Porcayo," which seems to be Albert Garcia, shows an extensive criminal record including several narcotics offenses. An NCIC warrant on a parole violation, armed and dangerous robbery, was outstanding for Garcia. The warrant also recites that Garcia or unknown associates had entered the storage unit for short periods exiting within four to six minutes on two occasions. The storage managers had not noticed anything taken out. In addition, the dog sniff by a trained narcotics dog and affirmative alert is referred to in the affidavit. The affidavit recites the facts of the dog's qualifications.

The officers training and experience is also recited in support of the warrant.

The warrant and supporting affidavit in this case provide the necessary constitutional particularity as to the things to be seized and the place and person to be searched. The level of suspicion for probable cause for a search warrant is a "fair probability." *Illinois v. Gates,* supra. The factual statement must be examined against an objective standard. *Id.* A fair reading of the affidavit shows probable cause to conclude that Albert Garcia was, at the time, selling and storing narcotics in conjunction with the premises to be searched. See *United States v. Martinez,* 764 F.2d 744, 746 (10th Cir.1985); *United States v. Rutherford,* 824 F.2d 831 (10th Cir.1987); *United States v. Burns,* 624 F.2d 95 (10th Cir.1980) (drug seizure warrant); *United States v. Shauble,* 647 F.2d 113 (10th Cir.1981); *United States v. Harper,* 550 F.2d 610 (10th Cir.1977). The affidavit was not stale. *United States v. Shomo,* 786 F.2d 981, 983 (10th Cir.1986). See also *United States v. White,* 704 F.Supp. 90 (E.D.N.C.1989). There is no merit to the challenge to the warrant for K–68.

 The affidavit for the search of the residence was submitted by Sgt. Charles Illsley of the West Valley Police Department who is a designated Drug Enforcement agent with the Drug Task Force. The warrant was issued on January 17, 1992 by the same state circuit judge who issued the warrant for the storage unit. The warrant authorized a search of the residence for cocaine, drug paraphernalia, and records and documents of drug activities.

It should be noted that defendants, Leon–Chavez and Uriarte, challenge the sufficiency of probable cause for the residence warrant in their memoranda. Defendant Zamora–Anaya challenged the warrant on the basis of *Franks v. Delaware,* supra, which contention has been previously found to be without merit. Leon–Chavez also contends items seized exceeded the scope of the warrant. However, at hearing or otherwise, he has not specified the items which were seized beyond the warrant.

There was some questioning about photographs. However, these items are clearly relevant evidence going to identity. Therefore, the only issue is whether the affidavit for the residence warrant states probable cause under the standard previously discussed.

The warrant for the residence recites the information that Officer McCarthy received from the storage unit manager including the connection to Albert Garcia, the alert by the narcotics dog and recovery of the kilos of cocaine. It also recites that the truck the three defendants drove to the storage shed had the address for the residence sought to be searched on a temporary sticker on the vehicle. The affidavit contained the information as to Albert Garcia. It sought to search for Garcia who was wanted on an outstanding warrant as indicated on an (Nation Crime Information Center) NCIC check. The utility service on the home was connected to Garcia. The utilities also indicated the premises belonged to Garcia. The search of the storage unit did not disclose scales, packaging, currency or paraphernalia usually used in drug trafficking activity. Thus the premises to be searched were identified with Garcia and who was associated with drug trafficking activity. Garcia was connected with storage unit where the drugs were found. Records and currency are a part of drug trafficking activity, as are scales and paraphernalia. The warrant authorized the search and seizure of the residence for Albert Garcia, cocaine, paraphernalia, records and currency.

 It has been recognized that a warrant may be issued in consideration of the transitory nature of a criminal activity. *United States v. Hillyard,* 677 F.2d 1336 (9th Cir.1982). It is necessary that there be probable cause to conclude the items sought are at the place to be searched. *Naugle v. Witney,* 755 F.Supp. 1504 (D.Utah 1990); LaFave, *Search and Seizure,* Vol. 2 § 3.7(d). This includes records and evidence of criminal activity. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). The place of residence or other connection to criminal

activity will justify a warrant to search for evidence that might be located at such a place. *United States v. Killip,* 819 F.2d 1542 (10th Cir.1987); *United States v. Harris,* 903 F.2d 770 (10th Cir.1990) (the place to be searched was several hundred miles from site of crime); *United States v. Apker,* 705 F.2d 293, 301–304 (8th Cir.1983). The question is whether there is a connection to the place to be searched. *Anthony v. United States,* 667 F.2d 870 (10th Cir. 1981). The applicable standard was addressed in the *Anthony* case:

> In determining whether or not probable cause exists to believe that evidence of a crime will be found at the place to be searched, the magistrate is entitled to rely upon practical considerations of everyday life. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

> From the description in the affidavit of the recording device, it was not unreasonable for the magistrate to assume that this device had to be assembled. Taking this assumption one step further, it was reasonable to assume that Anthony might have assembled the device at his residence. (Citing cases).

\* \* \* \* \* \*

Anthony contends that because nobody directly observed any evidence of the crime at his residence and because he had no opportunity to conceal evidence there after his arrest, it was unreasonable to assume that evidence of the crime would be found at his home. However, as we noted in *United States v. Rahn,* supra, at p. 293 "[t]he affidavit need not contain information providing '... certainty that the objects sought will be found as a result of the search.' *Porter v. United States,* 335 F.2d 602 (9th Cir. 1964), cert. denied, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965)." Nor, is it necessary for the affidavit to contain a recital that someone had personally observed evidence at the defendant's residence when it is reasonable to assume that certain types of evidence would be kept at a defendant's residence.

See also *United States v. Rahn,* 511 F.2d 290 (10th Cir.1975). In *United States v. Reyes,* 798 F.2d 380, 382 (10th Cir.1986), citing *Anthony,* the court observed in a cocaine prosecution said:

> An affidavit in support of a search warrant must provide a substantial basis for determining the existence of probable cause; that there is a fair probability that evidence of a crime will be found in the place to be searched. *Massachusetts v. Upton,* 466 U.S. 727 [733], 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

\* \* \* \* \* \*

> Reyes complains that the information in the affidavit contained no specific link to his residence. The affidavit did indicate that participants in the conspiracy maintained records regarding their activities. It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence.

See also *United States v. Williams,* 897 F.2d 1034, 1038 n. 2 (10th Cir.1990).

In this case, there is probable cause to support the conclusion that the premises at 815 No. 1400 West were associated with narcotics activity. There is an adequate nexus between the premises, the drug trafficking activity, and the items to be seized. The warrant did not violate the Fourth Amendment.

 The defendants contend the search exceeded the scope of the warrant. However, there is no evidence that has been presented that refutes the seizure of items outside the warrant as being other than obtained in plain view during the lawful search of the premises. The evidence of items seized was of photographs, papers and weapons. These were items for which there was probable cause to believe were at least evidence of criminal activity. The seizure of such items, under the circumstances, is proper under the plain view doctrine, *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The seizure of

relevant evidence that is outside the specific authorization of the warrant is proper. *Andresen v. Maryland,* supra; *United States v. Reyes,* supra (seizure of cassette tape under warrant for drug records); *United States v. Butler,* 793 F.2d 951 (8th Cir.1986) (sundry items of evidence of an incriminating nature). Plaintiff has not refuted the government's showing that the photographs and items were relevant. The defendants have offered no evidence on this matter to show the impropriety of any seizure. This matter has not been developed to support defendants' claims.[6]

### Good Faith

In this case, if it is assumed the magistrate judge's conclusion of adequate probable cause for each of the two warrants in question is incorrect, there is still sufficient evidence that justifies the application of the good faith exception to the exclusionary rule enumerated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). In this case there is objective evidence on which the officers could have relied to believe there was probable cause for the warrants, including the authorization by a state court judge. The government bears the burden of proof, of establishing good faith, *United States v. Leary,* 846 F.2d 592, 607 (1988); *United States v. Michaelian,* 803 F.2d 1042, 1048 (9th Cir. 1986). The objective facts are not such that it can be said that a reasonably well trained officer would have known there was insufficient probable cause evidence for the warrants. *Leon* 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. The affidavits are not devoid of substantial facts. *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985); *United States v. Medlin,* 798 F.2d 407, 409 (10th Cir.1986). See *United States v. Corral-Corral,* 899 F.2d 927 (10th Cir.1990) (drug prosecutions, good faith standard applied); *United States v. Cook,* 854 F.2d 371 (10th Cir.1988) (drug prosecution, good faith standard applied). Consequently, there is no basis to apply the exclusionary rule, in this case, as to the searches made under authority of the warrants. Id.

### Conclusion

The motion to dismiss of defendant, Zamora-Anaya, should be denied. The motion to suppress of all defendants should also be denied.

Copies of the foregoing report and recommendation are being mailed to the parties. They are hereby notified of their right to file objections hereto within ten days from the receipt hereof.

DATED this 18th day of May, 1992.

---

6. See the memorandum of defendants in which there is no specificity of the items allegedly seized that were beyond the scope of the warrant.